UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on
November 3, 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NUMBER: |
| | : | |
| | : | GRAND JURY ORIGINAL |
| | : | |
| | : | VIOLATIONS: |
| v. | : | |
| | : | Title 18, United States Code, |
| ERICK R. BROWN, and | : | Sections 2, 241, 371, 1001, and |
| MILAGROS L. MORALES, | : | 1512(c)(2). |
| | : | |
| Defendants. | : | |
| | : | |

## INDICTMENT

### INTRODUCTION

The Grand Jury charges:

1.      That in February 2005, Club U was a nightclub located at 2000 14th Street, N.W., Washington, D.C., in the Reeves Center. When it was in operation, Club U hired musical entertainment from time to time, including the band Rare Essence, to perform for paying customers from Washington, D.C., and the surrounding jurisdictions.

2.      That in the early morning hours of February 13, 2005, while the band Rare Essence performed for paying customers, Terrance Brown was murdered during a fight at Club U (hereinafter the "Club U matter"). Terrance Brown was stabbed multiple times in

various areas of his body. The cause of his death was an approximately three and one half inch stab wound to his heart. Terrance Brown was attacked by at least two people: Jerome Jones who used a box cutter to prosecute the assault and Suspect A, a man in a black shirt.

3. That at all times material to this Indictment, ERICK R. BROWN and MILAGROS L. MORALES were detectives with Washington, D.C.'s, Metropolitan Police Department (hereinafter "MPD") assigned to different squads in the Violent Crime Branch's Homicide Unit.

4. That at all times material to this Indictment, it was part of ERICK R. BROWN'S and MILAGROS L. MORALES'S official duties to investigate and otherwise work on murder cases where the homicide occurred within Washington, D.C. Such cases were investigated by MPD's Violent Crimes Branch's Homicide Unit. When a murder occurred in Washington, D.C., one of the six squads of the Homicide Unit was assigned to investigate the murder. Each homicide squad consisted of approximately nine people. One member of the assigned squad was designated as "primary," or "lead," meaning that the responsibility for that investigation fell upon that primary, or lead, detective. The primary detective was supported in the investigation by other members of the primary detective's squad. At some point either during an investigation or after an arrest was made, a case was presented for prosecution to the United States Attorney's Office for the District of Columbia (hereinafter "D.C. USAO") for prosecution.

5. That it was a further part of ERICK R. BROWN'S and MILAGROS L.

2

MORALES'S official duties to utilize information provided by witnesses to murders in order to determine how the crime was committed and arrest and charge the perpetrator, or perpetrators, of the crime.

6. That MILAGROS L. MORALES'S squad of the Homicide Unit was assigned to the Club U matter in the morning hours of February 13, 2005, and MILAGROS L. MORALES was designated the primary detective in the murder investigation.

7. That almost immediately after MILAGROS L. MORALES was assigned the Club U matter, ERICK R. BROWN began to investigate the case with MILAGROS L. MORALES. As part of this investigation ERICK R. BROWN and MILAGROS L. MORALES interviewed Witness A and Witness B who both saw Terrance Brown attacked at Club U on February 13, 2005. These interviews were video-taped. On February 15, 2005, based in part on these interviews, ERICK R. BROWN and MILAGROS L. MORALES presented an arrest warrant for Jerome Jones to a supervisory AUSA in the D.C. USAO (hereinafter "assigned AUSA"). The draft arrest warrant charged Jerome Jones with murder one while armed. On a date soon after February 15, 2005, and after a detailed review of the investigative file, including viewing the video-taped statements of Witness A and Witness B, the assigned AUSA did not sign the draft arrest warrant and requested that she be able to interview Witness A and Witness B. ERICK R. BROWN refused to bring Witness A and Witness B in to speak with the assigned AUSA. After being ordered by a supervisor in MPD to bring the witnesses into

3

the D.C. USAO, ERICK R. BROWN and MILAGROS L. MORALES brought in Witness A and Witness B on separate and subsequent days. ERICK R. BROWN and MILAGROS L. MORALES brought Witness A to the D.C. USAO to meet with the assigned AUSA and an MPD official on or about February 16, 2005. ERICK R. BROWN and MILAGROS L. MORALES brought Witness B to the D.C. USAO to meet with the assigned AUSA and an MPD official on or about February 17, 2005.

8. That under color of law, ERICK R. BROWN and MILAGROS L. MORALES caused Witness A and Witness B to alter their testimony, and provide untruthful information, about what they had seen at Club U on February 13, 2005, such that Witness A and Witness B attributed conduct to Jerome Jones that was not accurate and that was different than Witness A's and Witness B's video-taped statements that were previously recorded by ERICK R. BROWN and MILAGROS L. MORALES. As stated by Witness B, Witness B was not truthful with the assigned AUSA. Rather, Witness B said that Witness B told the assigned AUSA "what the detectives told me to say." Among other things, MILAGROS L. MORALES told Witness A that they had a witness, Witness B, who said that Jerome Jones had a box cutter, but that they were "trying to get [Witness B] away from saying box cutter and to get her to say knife-like object." MILAGROS L. MORALES told Witness A that ERICK R. BROWN and MILAGROS L. MORALES were trying to alter Witness B's testimony in this way because a wound from a box cutter did not fit with the forensic evidence. In addition, after MILAGROS L. MORALES convinced Witness A to alter Witness A's description of what Witness A had seen at Club

U on February 13, 2005, MILAGROS L. MORALES told Witness A not to "fuck up" the investigation. ERICK R. BROWN and MILAGROS L. MORALES did not tell the assigned AUSA that they had talked to Witness A and Witness B about changing their testimony until confronted with the differences between what Witness B said on her video-taped statement and what she was saying to the assigned AUSA.

9. That the assigned AUSA showed Witness B Witness B's video-taped statement, referred to in paragraph 7, above, which was different in three material respects from what Witness B told the assigned AUSA. Witness B continued to say to the assigned AUSA what ERICK R. BROWN and MILAGROS L. MORALES had told Witness B to say, which was not truthful. Because of these inconsistencies, the assigned AUSA, requested to speak with Witness C. ERICK R. BROWN again refused to allow the assigned AUSA to interview Witness C. A supervisor in MPD ordered ERICK R. BROWN and MILAGROS L. MORALES to bring Witness C to the D.C. USAO to be interviewed by the assigned AUSA.

10. That, after being ordered to do so, ERICK R. BROWN and MILAGROS L. MORALES went to bring Witness C to meet the assigned AUSA, and under color of law, ERICK R. BROWN and MILAGROS L. MORALES caused Witness C to alter Witness C's testimony about what she saw at Club U on February 13, 2005, such that she attributed conduct to Jerome Jones that was not accurate. ERICK R. BROWN and MILAGROS L. MORALES did not tell the assigned AUSA that they had talked to Witness C about changing Witness C's testimony about what happened at Club U on

February 13, 2005, until confronted by an MPD supervisor and the assigned AUSA.

11. That ERICK R. BROWN and MILAGROS L. MORALES attempted to obstruct, influence, and impede, the investigation into the Club U matter by (a) failing to disclose exculpatory evidence to, and (b) encouraging Witness A, Witness B, and Witness C, to make false statements to, the assigned AUSA who had supervisory authority to determine what charge, or charges, would be brought against the target, or targets, of ERICK R. BROWN'S and MILAGROS L. MORALES'S investigation into the Club U matter.

12. That on or about February 21, 2005, supervisors at MPD removed ERICK R. BROWN from any role in the Club U matter.

13. That on or about February 21, 2005, MILAGROS L. MORALES called Witness B and told Witness B that ERICK R. BROWN had been removed from the Club U investigation. During the call MILAGROS L. MORALES also asked Witness B what Witness B would say if asked by anyone if Witness B had changed Witness B's testimony because of what ERICK R. BROWN and MILAGROS L. MORALES had told Witness B to say.

14. That on or about February 23, 2005, supervisors at MPD removed MILAGROS L. MORALES from any role in the Club U matter.

15. That on or about February 24, 2005, MILAGROS L. MORALES called Witness B and told Witness B that she, MILAGROS L. MORALES, had been removed from the Club U investigation and that MPD's Internal Affairs Division was going to

investigate the Club U matter. In addition, MILAGROS L. MORALES told Witness B that Witness B was going to have to go into the Grand Jury to testify about the Club U matter, and MILAGROS L. MORALES again asked Witness B what Witness B would say if asked in the Grand Jury if Witness B had changed Witness B's testimony because of what ERICK R. BROWN and MILAGROS L. MORALES had told Witness B during their work on the case.

## COUNT ONE – CONSPIRACY AGAINST CIVIL RIGHTS

The Grand Jury charges:

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.  That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD and while acting under color of law, did willfully conspire with each other to injure, oppress, threaten, and intimidate, Jerome Jones in his free exercise and enjoyment of a right and privilege secured to Jerome Jones by the Constitution and laws of the United States, that is, the Fourth Amendment right to be free from unreasonable seizure by persons acting under color of law.

**(Conspiracy Against Civil Rights in violation of
Title 18, United States Code, Section 241)**

## **COUNT TWO – CONSPIRACY TO OBSTRUCT JUSTICE**

The Grand Jury charges:

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.  That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, attempted to cause, and did cause, Witness A to alter Witness A's testimony and be untruthful about the Club U matter.

**(Conspiracy to Obstruct Justice in violation of Title 18, United States Code, Sections 2, 371, and 1512(c)(2))**

## COUNT THREE – CONSPIRACY TO OBSTRUCT JUSTICE

The Grand Jury charges:

1.	That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.	That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, attempted to cause, and did cause, Witness B to alter Witness B's testimony and be untruthful about the Club U matter.

**(Conspiracy to Obstruct Justice in violation of Title
18, United States Code, Sections 2, 371, and 1512(c)(2))**

## **COUNT FOUR – CONSPIRACY TO OBSTRUCT JUSTICE**

The Grand Jury charges:

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.  That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, attempted to cause, and did cause, Witness C to alter Witness C's testimony and be untruthful about the Club U matter.

**(Conspiracy to Obstruct Justice in violation of Title
18, United States Code, Sections 2, 371, and 1512(c)(2))**

## COUNT FIVE – CONSPIRACY TO OBSTRUCT JUSTICE

The Grand Jury charges:

1. That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2. That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, (a) provided false information to the assigned AUSA about the ongoing Club U investigation in order to convince her to agree that they could obtain an arrest warrant for Jerome Jones for murder one while armed, and (b) failed to provide exculpatory evidence to the assigned AUSA about the ongoing Club U investigation.

**(Conspiracy to Obstruct Justice in violation of Title 18, United States Code, Sections 2, 371, and 1512(c)(2))**

## COUNT SIX – PROVISION OF MATERIAL AND FALSE INFORMATION

The Grand Jury charges:

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.  That on or about February 16, 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abetters, did knowingly and willfully, make, or cause to be made, a materially false, fictitious, or fraudulent, statement or representation, in a matter within the jurisdiction of the executive, legislative, or judicial, branch of the Government of the United States, specifically, ERICK R. BROWN and MILAGROS L. MORALES caused Witness A to provide material and untruthful information about the Club U matter.

**(Provision of Material and False Information in violation of,
Title 18, United States Code, Sections 2 and 1001)**

## COUNT SEVEN – PROVISION OF MATERIAL AND FALSE INFORMATION

The Grand Jury charges:

1. That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2. That on or about February 17, 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abetters, did knowingly and willfully, make, or cause to be made, a materially false, fictitious, or fraudulent, statement or representation, in a matter within the jurisdiction of the executive, legislative, or judicial, branch of the Government of the United States, specifically, ERICK R. BROWN and MILAGROS L. MORALES caused Witness B to provide material and untruthful information about the Club U matter.

**(Provision of Material and False Information in violation of,
Title 18, United States Code, Sections 2 and 1001)**

## COUNT EIGHT – PROVISION OF MATERIAL AND FALSE INFORMATION

The Grand Jury charges:

1. That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2. That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abetters, did knowingly and willfully, make a materially false, fictitious, or fraudulent, statement or representation, in a matter within the jurisdiction of the executive, legislative, or judicial, branch of the Government of the United States, specifically, ERICK R. BROWN and MILAGROS L. MORALES provided material and untruthful information about their investigation of the Club U matter to the assigned AUSA.

**(Provision of Material and False Information in violation of, Title 18, United States Code, Sections 2 and 1001)**

A TRUE BILL

FOREPERSON

Dated: _____, by Foreperson

*John L. Brownlee / by WFG.*

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE WESTERN DISTRICT OF VIRGINIA