# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NUMBER: |
| | : | 1:2007-cr-00075-CKK |
| | : | |
| | : | The Honorable Colleen |
| v. | : | Kollar-Kotelly |
| | : | |
| ERICK R. BROWN, and | : | |
| MILAGROS L. MORALES, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## UNITED STATES'S MOTION TO REVIEW REPRESENTATION

The United States, by and through its attorney, the United States Attorney for the Western District of Virginia, hereby requests that the Court review the propriety of David Schertler's and Danny Onorato's representation of Milagros Morales in this matter. Schertler and Onorato have an actual conflict of interest in the case, and their representation may substantially and negatively impact both their client, Morales, and her co-defendant, Erick Brown.

I.   Facts

In the morning of February 13, 2005, Terrance Brown was murdered at Club U. Club U was located within the Court's jurisdiction at 2000 14th Street, N.W., Washington, D.C.[1] Brown was attacked by two people. Jerome Jones cut him with a box cutter, and another

---

[1] As of this writing, Club U is out of business.

person attacked him with a knife. As Club U was then a nightclub, there were a number of people who witnessed Brown's assault. At the time of the attack, the musical band Rare Essence was playing for the patrons of the club, and the club was rather crowded.

Very soon after Brown's murder, Morales and Erick Brown began to investigate the murder. The conduct charged in the Grand Jury's Indictment relates to the investigation conducted by these two detectives. After the conduct charged in the Indictment occurred, supervisors with the District's Metropolitan Police Department took Morales and Erick Brown off the Brown murder investigation. Soon thereafter, both Morales and Erick Brown retained Schertler and Onorato as attorneys. Schertler and Onorato are the two name partners in the law firm Schertler & Onorato, L.L.P. Schertler and Onorato represented both defendants for over a year. They represented the defendants in discussions with the U.S. Attorney's Office in Washington, D.C., as well as the U.S. Attorney's Office in the Western District of Virginia, which is now litigating this matter. In addition, they represented both defendants in discussions with the Civil Rights Division of the Justice Department in Washington, D.C. Shortly before the Grand Jury's Indictment was returned in this matter and after the negotiations between the parties ended, Erick Brown retained his current attorneys, Reid Weingarten and Brian Heberlig of Steptoe & Johnson, L.L.P. Schertler and Onorato continue to represent Morales.

II.     The Conflict

Wheat v. United States, 486 U.S. 153 (1988), sets forth the critical test in this area of law.  In Wheat, Wheat along with numerous co-defendants, including Gomez-Barajas and Bravo, were charged with participating in a far-flung drug distribution conspiracy.  Gomez-Barajas and Bravo were represented by attorney Iredale.  Gomez-Barajas was tried first and acquitted on the conspiracy charge and was contemplating a plea to tax charges to avoid further trial.  Bravo pled guilty to one count of transporting marijuana pursuant to a plea agreement.  At the conclusion of Bravo's plea hearing, Iredale stated that he had been asked to represent Wheat.  The government objected based on the potential conflict which would arise from Iredale's prior representation of Bravo and Gomez-Barajas.  In response, Wheat argued that the circumstances creating a conflict of interest as posited by the government were "highly speculative" and, in any event, all three defendants were willing to waive any future claims of conflict.  Wheat also suggested that the government was "manufacturing implausible conflicts" to disqualify Iredale, who had been extremely effective in representing Bravo and Gomez-Barajas. Id. at 154-157.  The trial court found "an irreconcilable conflict" and disqualified Iredale.  The Supreme Court affirmed.  The Court held that a defendant's right to counsel of his choice may be circumscribed by the district court in the exercise of its "independent duty to ensure that criminal defendants receive a trial that is fair." Id. at 161.  In exercising that duty and passing on the issues of conflict and waiver, trial courts operate "not with the wisdom of hindsight after a trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly." Id. at 162. The

trial courts must, therefore, be allowed "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163.

Courts have applied Wheat in several cases to disqualify counsel in conflict of interest situations. United States v. Howard, 115 F.3d 1151, 1155-1156 (4th Cir. 1997); United States v. Williams, 81 F.3d 1321, 1324-1325 (4th Cir. 1996); United States v. Scott, 980 F. Supp. 165 (E.D. Va. 1997). In each case, the courts reaffirmed the substantial latitude vested in the judiciary to remedy actual and potential conflicts of interest to ensure the integrity of the criminal judicial process. This Circuit has similarly examined such conflicts with great care. Citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1990), a significant case in this area of law, the D.C. Circuit stated that a claim based on ineffective assistance of counsel succeeds if a defendant "shows that 'an actual conflict of interest adversely affected his lawyer's performance.'" United States v. Gantt, 140 F.3d 249, 252 (D.C. Cir. 1998). The Circuit stated that an attorney has "'an actual conflict' when he is 'required to make a choice advancing [another client's] interests to the detriment of his client's interests." Id. citing United States v. Brice, 89 F.3d 886, 893 (D.C. Cir. 1996) (other citations omitted). This Court may also find Bruce, above, at 890-896, helpful. In Brice, Judge Wald offers a detailed and thoughtful analysis of the Sixth Amendment's conflict protection albeit in a different context than presented herein.

The government believes that the Cuyler test as articulated in Gantt and Brice is what must occupy the Court's attention here. The question is whether Schertler and Onorato have an actual conflict of interest, and if they do, the Court must determine from all counsel and their clients whether there is any chance that this conflict will result in "some negative effect upon [Morales's or Erick Brown's] defense (defined as 'an actual lapse in representation')." United States v. Shark, 51 F.3d 1072, 1076 (D.C. Cir. 1995), quoting Cuyler, above, at 349-350. It is difficult for the government to see the representation structure here as anything but an actual conflict, although the second question regarding whether there will be a lapse in representation is concededly more difficult. Morales and Erick Brown are charged together in the same Indictment with the same conduct. Any controversy about who did what in dealing with the witnesses with whom the detectives tampered would create a conflict during trial. Either Schertler or Onorato may cross-examine witnesses using information that they have learned as both Morales's and Erick Brown's attorneys, while constitutionally, their focus must be for the benefit of their current client, Morales. Such questioning could easily be to Erick Brown's detriment. In the worst case scenario for this issue, they may be in the position of examining their former client, Erick Brown, using information that they have previously obtained pursuant to their attorney client relationship with him, now severed. However, if Schertler and Onorato decline to examine Erick Brown because of the unseemliness of being in the position of cross-examining a former client, they may well be harming Morales's defense. Either situation would be inappropriate.

III.     Conclusion

Based on the above, the government respectfully requests that the Court inquire into the attorney status in this matter and potentially disqualify Schertler and Onorato from representing either defendant. Obviously, the Court should follow its own course, nevertheless, the government suggests that the Court inquire of counsel, ex parte, should it think appropriate, how they propose to avoid the potential harms alluded to above. Second, the government suggests that the Court inform Morales and Erick Brown that Schertler's and Onorato's participation in this case and trial could harm their defense, and potentially, depending on how the trial occurs, could be to their significant detriment. Their waivers of this conflict should be clear and unequivocal after a fairly dire warning.

Schertler and Onorato, who are both exceptional lawyers, participated actively and effectively in this matter for some length of time during the investigation phase of this civil rights case. The information that they presumably learned from Erick Brown and the fact of their representation of him has the potential to harm both Morales's and Erick Brown's defense. Given this, the government asks that the Court examine Schertler's and Onorato's

participation in this case carefully and either remove them from the matter or assure itself that it has a clear and unequivocal waiver of this actual conflict of interest.

        Respectfully submitted,

        JOHN L. BROWNLEE
        United States Attorney


        s/ William F. Gould_____
        William F. Gould
        Assistant United States Attorney
        District of Columbia Bar # 428468
        Virginia State Bar # 67002

## CERTIFICATE

I certify that a true and correct copy of this government motion to inquire into the attorney status in this case has been filed through the Court's electronic filing system, which will send a copy to counsel for both defendants, David Schertler and Danny Onorato of Schertler & Onorato, L.L.P., for Milagros Morales, and Reid Weingarten and Brian Heberlig of Steptoe & Johnson, L.L.P., for Erick Brown, on this 11th day of April, 2007.

s/ William F. Gould_____
William F. Gould
Assistant United States Attorney