## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ERICK R. BROWN, and MILAGROS L.
MORALES,

Defendants.

Crim. No. 07–75 (CKK)

# FILED

JUL - 9 2007

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## MEMORANDUM OPINION
(July 9, 2007)

On April 11, 2007, Defendants Erick R. Brown and Milagros L. Morales filed five

motions to dismiss and a motion for a bill of particulars in the instant case. On May 11, 2007,

the Government filed an Omnibus Opposition. On May 23, 2007, Defendants filed Replies to the

aforementioned motions. The Court held a motions hearing on June 26, 2007, and GRANTED

[15] Defendants' Motion for a Bill of Particulars on June 27, 2007 based on the discussion

reflected on the record. Based on these filings, the Parties' arguments and representations at the

motions hearing, the relevant statutes and case law, the Indictment, and the history of the case,

the Court shall GRANT [13] Defendants' Motion to Dismiss Counts Two Through Five for

Failure to Allege Cognizable Conspiracies to Violate 18 U.S.C. § 1512(c)(2); GRANT in the

alternative [14] Defendants' Motion to Dismiss Counts Two Through Five of the Indictment for

Unconstitutional Multiplicity; DENY AS MOOT [11] Defendants' Motion to Dismiss Counts

Two Through Five for Failure to State an Offense Under 18 U.S.C. §§ 371 and 1512(c); DENY

AS MOOT [12] Defendants' Motion to Dismiss Counts Two Through Five of the Indictment for

Failure to Allege an Essential Element; and DENY as to the remaining Counts One, Six, Seven,

and Eight [10] Defendants' Motion to Dismiss Counts One Through Eight of the Indictment for

Lack of Specificity. Accordingly, Counts Two, Three, Four, and Five of the Indictment shall be DISMISSED.

## I. BACKGROUND

Co-Defendants Brown and Morales, both Detectives of the Metropolitan Police Department (MPD), were indicted on March 21, 2007 on the following charges related to their investigation of the murder of Terrance Brown (no relation) on February 13, 2005 (including their interactions with witnesses during their investigation): Count 1–Conspiracy Against Civil Rights in violation of 18 U.S.C. § 241; Counts 2-5–Conspiracy to Obstruct Justice in violation of 18 U.S.C. §§ 2, 371, 1512(c)(2); Counts 6-8–Provision of Material and False Information in violation of 18 U.S.C. §§ 2, 1001. Both Defendants were arraigned in Court on March 28, 2007. The United States Attorney's Office for the Western District of Virginia is litigating this matter, as the United States Attorney's Office for the District of Columbia recused itself.

On April 11, 2007, Defendants filed the following six pretrial motions in this case: [10] Defendants' Motion to Dismiss Counts One Through Eight of the Indictment for Lack of Specificity; [11] Defendants' Motion to Dismiss Counts Two Through Five for Failure to State an Offense Under 18 U.S.C. §§ 371 and 1512(c); [12] Defendants' Motion to Dismiss Counts Two Through Five of the Indictment for Failure to Allege an Essential Element; [13] Defendants' Motion to Dismiss Counts Two Through Five for Failure to Allege Cognizable Conspiracies to Violate 18 U.S.C. § 1512(c)(2); [14] Defendants' Motion to Dismiss Counts Two Through Five of the Indictment for Unconstitutional Multiplicity; and [15] Defendants' Motion for a Bill of Particulars. On May 11, 2007, the Government filed an Omnibus Opposition. On May 23, 2007, Defendants filed Replies to the aforementioned motions. On

2

June 26, 2007, the Court held a lengthy motions hearing, during which the Court made a number

of inquiries relating to the aforementioned motions. On June 27, 2007, the Court granted [15]

Defendants' Motion for a Bill of Particulars.

## II. DISCUSSION

Defendants' five remaining pretrial motions were filed pursuant to Federal Rule of

Criminal Procedure 12(b)(3)(B). Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B),

a defendant must raise prior to trial "a motion alleging a defect in the indictment or information--

but at any time while the case is pending, the court may hear a claim that the indictment or

information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P.

12(b)(3)(B). "'[W]hile a pretrial motion need not state explicitly the grounds upon which a

motion is made, it must contain facts and arguments that make clear the basis of defendant's

objections.'" *United States v. Hewlett*, 395 F.3d 458, 460 (D.C. Cir. 2005) (quoting *United

States v. Mitchell*, 951 F.2d 1291, 1296 (D.C. Cir. 1991) (internal quotation marks omitted)).

The Court shall first address the four Motions to Dismiss pertaining to Counts Two through Five

and then Defendants' Motion to Dismiss for lack of specificity with respect to the remaining

Counts.

> A.     *The Court shall GRANT [13] Defendants' Motion to Dismiss Counts Two
> Through Five for Failure to Allege Cognizable Conspiracies to Violate 18 U.S.C.
> § 1512(c)(2).*

Defendants argue that Counts Two, Three, Four, and Five of the Indictment should be

dismissed because "[a] D.C. Superior Court grand jury investigating a local murder is not an

'official proceeding' for purposes of 18 U.S.C. §§ 1512(c)(2) and 1515(a)(1)(A)." Defs.' Mem.

[13] at 2. Defendants argue that "[a]lthough the Indictment alleges that Defendants conspired to

3

obstruct an 'official proceeding,' the Indictment does not allege that the AUSA was investigating any federal offense or anything other than the local homicide that took place at Club U in the District of Columbia." *Id.* at 3. More specifically, "[f]rom the allegations in the Indictment, it is obvious that the only 'proceeding' pending or about to be pending at the time of the alleged obstruction is a D.C. Superior Court grand jury proceeding. In fact, as the government should be able to confirm, Defendants understand that the grand jury investigation into the death of Terrance Brown took place before a D.C. Superior Court grand jury, which heard the testimony of Witnesses A, B, and C." *Id.*

The Government offers three arguments in its Response. First, "the government urges the Court as an initial matter to find that a Superior Court Grand Jury is an official proceeding under Section 1515(a)(1)(A) given the District's unique status and because of the duel [*sic*] powers of the Superior Court Grand Juries." Gov't Resp. at 28. Second, "[i]f [the Court] disagrees with that, this particular Superior Court Grand Jury investigation was certainly an official proceeding, as the Grand Jury was investigating defendants' conduct regarding these witnesses and their attempt to charge and potentially convict Jones on evidence that was not truthful." *Id.* Third, the Government argues that "this case itself, which beyond all debate, is an official proceeding, certainly falls within the scope of the statute," and that accordingly the Court could consider the United States District Court grand jury investigation with respect to the instant case to be the "official proceeding" at issue. *Id.*

During the motions hearing, the Government did not contest the Court's characterization of the Government's third argument as circular; in sum, the Court agrees with Defendants that in its Response, the Government essentially "contends that Defendants can be prosecuted, based on

4

their conduct in February 2005, for attempting to obstruct their own prosecution for obstruction

of justice in 2007." Defs.' Reply to Defs.' [13] Mot. at 4-5. While the Court acknowledges that

"an official proceeding need not be pending or about to be instituted at the time of the offense,"

18 U.S.C. § 1512(f)(1), it is clear from the Indictment that the official proceeding Defendants are

alleged to have obstructed is the murder investigation of Terrance Brown, and the Court concurs

that the Government's "circular construction of the statute would widen its scope beyond any

sensible construction and render the 'official proceeding' requirement of the statute

meaningless." Defs.' Reply to Defs.' [13] Mot. at 5.

     Furthermore, during the motions hearing, counsel for the Government agreed that the

Government's core argument is that a D.C. Superior Court grand jury is an official proceeding

because it is *always* a "Federal grand jury," arguing that the Court must determine that a D.C.

Superior Court grand jury is either always or never a federal grand jury and does not change its

character based on the nature of the acts before it. Accordingly, the Government effectively

drops the second argument made in the Government's Response, which is dependent on the

circumstances of this particular case. Defendants' counsel, on the other hand, argued during the

motions hearing that the Court could conclude either that (1) a D.C. Superior Court grand jury is

never a "Federal grand jury" within the meaning of 18 U.S.C. § 1515(a)(1), or that (2) the D.C.

Superior Court grand jury investigating the murder of Terrance Brown was not a "Federal grand

jury," as Jerome Jones could not have been charged with a federal crime for his alleged actions

(which did not include a federal element). Assessing the limited existing case law and the

statutes at issue, the Court narrowly concludes that the D.C. Superior Court grand jury

investigating the murder of Terrance Brown was not a "Federal grand jury" as defined by 18

U.S.C. § 1515(a)(1). Accordingly, Defendants in this case did not "corruptly . . . obstruc[t],

influenc[e], or imped[e] any *official proceeding* [or attempt to do so]," as set forth in 18 U.S.C. §

1512(c)(2) (emphasis added) such that the Court shall grant [13] Defendants' Motion to Dismiss

Counts Two Through Five for Failure to Allege Cognizable Conspiracies to Violate 18 U.S.C. §

1512(c)(2).

Pursuant to 18 U.S.C. § 1512(c)(2), "[w]hoever corruptly . . . obstructs, influences, or

impedes any *official proceeding*, or attempts to do so, shall be fined under this title or imprisoned

not more than 20 years, or both." 18 U.S.C. § 1512(c)(2) (emphasis added). An "official

proceeding" as used in Section 1512 is defined as follows:

> (A) a proceeding before a judge or court of the United States, a United States magistrate
> judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of
> the Tax Court, a judge of the United States Court of Federal Claims, or a *Federal grand
> jury*;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency which is authorized by law; or
> (D) a proceeding involving the business of insurance whose activities affect interstate
> commerce before any insurance regulatory official or agency or any agent or examiner
> appointed by such official or agency to examine the affairs of any person engaged in the
> business of insurance whose activities affect interstate commerce;

18 U.S.C. § 1515(a)(1) (emphasis added).

While a D.C. Superior Court grand jury "may take cognizance of all matters brought

before it regardless of whether an indictment is returnable in the Federal or District of Columbia

courts" pursuant to D.C. Code § 11-1916(a), this does not resolve the question of whether a D.C.

Superior Court grand jury is either always or never a Federal grand jury pursuant to 18 U.S.C. §

1515(a)(1), which the court in *United States v. Allen* specifically acknowledged and declined to

reach. *United States v. Allen*, 729 F. Supp. 120, 121-22 (D.D.C. 1989) ("As defendant asserts,

the D.C. Superior Court is clearly not within [the] definition [of official proceeding]. The Court

need not reach the somewhat more difficult question of whether a D.C. Superior Court *grand*

*jury* is a 'federal grand jury' within the meaning of § 1515(a)(1)[.]") (internal quotations

omitted). *See also United States v. Smith*, 729 F. Supp. 1380, 1385 n.9 (D.D.C. 1990) ("Because

a grand jury was never convened in this case, the Court need not reach the question whether local

grand jury proceedings could be deemed 'federal' by virtue of D.C. Code Ann. § 11-1916(a).").

While a D.C. Superior Court grand jury and a United States District Court for the District of

Columbia grand jury share a common pool of jurors and use like selection processes, see

*Hackney v. United States*, 389 A.2d 1336, 1339-41 (D.C. 1978), the D.C. Circuit has noted that a

"grand jury does depend on the judiciary in its role as an investigative body," referring to a D.C.

Superior Court grand jury as a "*federally competent* grand jury," not as a "federal grand jury," in

a case in which a D.C. Superior Court grand jury returned an indictment in the United States

District Court for the District of Columbia on federal charges. *See United States v. Seals*, 130

F.3d 451, 457 (D.C. Cir. 1997).

The facts of this case are such that a determination of whether the D.C. Superior Court

grand jury investigating the murder of Terrance Brown functioned as a "Federal grand jury" is

relatively straightforward, particularly in light of the persuasive value of *Allen*. In *Allen*, the

defendant was originally investigated by a D.C. Superior Court grand jury for assault with a

deadly weapon; a witness who had been subpoenaed to testify before the D.C. Superior Court

grand jury was allegedly threatened by the defendant and never testified, and no indictment was

returned. *Allen*, 729 F. Supp. at 121. The defendant was later indicted by a United States

District Court for the District of Columbia grand jury for possession of an unregistered firearm

7

(the "deadly weapon" at issue) in violation of 26 U.S.C. § 5861(d) and via superceding

indictment for a count of witness tampering pursuant to 18 U.S.C. § 1512(b) related to the

proceedings before the D.C. Superior Court grand jury. *Id.* Judge Gerhard A. Gesell, as

indicated above, did not reach the defendant's argument that "a D.C. Superior Court grand jury

proceeding . . . is not an official proceeding within the meaning of [18 U.S.C. § 1512]." *Id.* at

121-22. Rather, Judge Gesell held that because the defendant's underlying gun-related actions

could be and were actually indicted as a federal charge, the United States District Court

proceeding on this underlying federal gun charge served as the "official proceeding" in that case

for purposes of the witness tampering charge:

> The fact that a Superior Court grand jury proceeding was scheduled at the time of the
> alleged threat does not undercut the applicability of section 1512(e)(1). The testimony
> that defendant was allegedly trying to prevent or influence relates to a federal charge,
> possession of an unregistered firearm, 26 U.S.C. § 5861(d), for which he is now being
> charged in this United States District Court, in an official proceeding within the meaning
> of the statute.

*Id.* at 122. In other words, the case turned on the federal nature of the defendant's underlying

criminal conduct.

     In this case, to the contrary, the Government conclusively admitted during the motions

hearing that no federal charge could have been brought for the murder of Terrance Brown, which

did not involve a gun or other federal element. Pursuant to the Indictment in this case,

Defendants drafted an arrest warrant charging Jerome Jones with "murder one while armed,"

Indictment at 3, a violation of local District of Columbia criminal law. "This matter, which was

being investigated by an AUSA, was brought before a grand jury of the D.C. Superior Court. To

[Defendants'] knowledge, the D.C. Superior Court grand jury was not asked to consider any

federal charges in connection with the murder of Terrance Brown." Defs.' [13] Mem. at 6

(internal footnote omitted). The Government agrees that Jerome Jones was charged with a

violation of the D.C. Criminal Code, and that the D.C. Superior Court grand jury was never

asked to consider any federal charges against Jerome Jones nor could they have based on his

actions.[1] Accordingly, as the D.C. Superior Court grand jury charged with investigating the

murder of Terrance Brown served only in a local capacity in its investigation of a locally-defined

crime, the Court holds that based on the facts in this case, Defendants did not allegedly obstruct a

"Federal grand jury" such that they cannot be charged with obstructing an "official proceeding"

pursuant to 18 U.S.C. § 1512(c)(2). Therefore, the Court shall grant [13] Defendants' Motion to

Dismiss Counts Two Through Five for Failure to Allege Cognizable Conspiracies to Violate 18

U.S.C. § 1512(c)(2), and shall dismiss Counts Two, Three, Four, and Five of the Indictment.

> B.    *In the Alternative, the Court shall GRANT [14] Defendants' Motion to Dismiss*
> *Counts Two Through Five of the Indictment for Unconstitutional Multiplicity.*

Defendants also argue that the conspiracies charged in Counts Two, Three, Four, and Five

are multiplicitous in violation of the Double Jeopardy Clause such that the Government should

only be allowed to proceed on one (if any) of the aforementioned Counts. Defs.' [14] Mem. at 1.

According to Defendants,

> A multiplicitous indictment violates the Double Jeopardy Clause by allowing multiple
> sentences to be imposed for a single offense, thereby unfairly increasing a defendant's
> exposure to criminal sanctions. Furthermore, such a defective indictment may
> substantially prejudice the defendant by falsely suggesting to a jury that a defendant has
> committed not one but several crimes.

---

[1] While not dispositive of this issue, the Court notes that as stated by Defendants
themselves, Defendants could have been properly charged in D.C. Superior Court pursuant to
D.C. Code Ann. § 22-722 for obstruction of justice during an District of Columbia investigation
into a local murder. *See* Defs.' Reply to Defs.' Mot. [13] at 4 (citing *Crutchfield v. United*
*States*, 779 A.2d 307 (D.C. 2001)).

9

*Id.* at 3 (internal quotations and citations omitted). Defendants apply a "totality of the circumstances" test from the Sixth, Seventh, and Ninth Circuits, arguing that focus on "'such factors as whether the conspiracies involve the same time period, alleged co-conspirators and places, [and] overt acts,'" demonstrates that the four conspiracies alleged in this case in Counts Two through Five are unconstitutionally multiplicitious. *Id.* at 4-5 (quoting *United States v. Powell*, 894 F.2d 895, 898 (7th Cir. 1990), *cert. denied*, 495 U.S. 939 (1990)). "Each of the four conspiracies charged in Counts Two through Five involve the same time period, location, and co-conspirators and are based upon identical underlying goals and conduct." *Id.* at 1; *see also id.* at 3 ("Each of the counts alleges that the conspiracy took place in February 2005 within the District of Columbia, that Defendants are the only co-conspirators, and that the purpose of the conspiracy was to provide false information to the AUSA about the Club U matter.").

The Government argues that Counts Two through Five "requir[e] proof of very different facts." Gov't's Resp. at 30.

> It is common to have the same crime charged multiple times in one indictment when the charges are premised on different conduct. For example, a typical drug or fraud indictment may have one lead conspiracy count to be followed by multiple specific incident-based substantive underlying charges; multiple but not multiplicitous.

*Id.* at 31. However, the inclusion of a "lead conspiracy count to be followed by multiple specific incident-based substantive underlying charges" in an Indictment is wholly unlike the Indictment in the instant case, which includes multiple *conspiracy* charges. The Government also argues that including all of the charged conduct in one count could create a unanimity problem with the verdict. *Id.* at 30-31. The Court does not deem this latter argument to be valid, however, as this Court would require a verdict form for a conspiracy charge including multiple underlying overt acts to designate whether or not unanimity was reached with respect to each underlying overt act.

"An indictment is multiplicious, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 932 (1992), *abrogated on other grounds*, *United States v. Stewart*, 246 F.3d 728 (D.C. Cir. 2001). In addition, multiplicitous charges "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). Under *Blockburger*, the relevant test for determining whether two counts of an indictment are multiplicitous is as follows: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [count] requires proof of a fact which the other does not."
*Blockburger*, 284 U.S. 299, 304 (1932).

However, an assessment of multiplicity with respect to conspiracy charges presents a unique challenge in part due to the nature of the crime of "conspiracy":

> To establish a criminal conspiracy under section 371, the government must prove beyond a reasonable doubt that: (1) two or more persons formed an agreement either to commit an offense against or defraud the United States; (2) the defendant knowingly participated in the conspiracy with the intent to commit at least one of the offenses charged or to defraud the United States; and (3) at least one overt act was committed in furtherance of the common scheme.

*United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985).

> [W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

*Braverman v. United States*, 317 U.S. 49, 53 (1942). "It is settled that the agreement is the

11

essence of the conspiracy; provided that there is only one agreement, the government may allege

one conspiracy with multiple illegal objects." *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4

(D.D.C. 1999) (citing *Braverman*, 317 U.S. at 53). "[N]either a multiplicity of objects nor a

multiplicity of means converts a single conspiracy into more than one offense." *May v. United

States*, 175 F.2d 994, 1002 (D.C. Cir. 1949).

"In determining whether the evidence supports a finding of a single conspiracy or instead

only demonstrates multiple conspiracies, we look at whether the defendants 'shared a common

goal,' any 'interdependence between the alleged participants,' and 'any overlap among alleged

participants,' such as the presence of core participants linked to all the defendants." *United

States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (citing *United States v. Graham,* 83 F.3d

1466, 1471 (D.C. Cir. 1996); *United States v. Tarantino,* 846 F.2d 1384, 1393 (D.C. Cir. 1988),

*cert. denied*, 488 U.S. 840 (1988)); *United States v. Mathis*, 216 F.3d 18, 23 (D.C. Cir. 2000).

Furthermore, "[t]o determine the scope of the alleged conspiratorial agreement, the court is

bound by the language of the indictment. Adherence to the language of the indictment is

essential because the Fifth Amendment requires that criminal prosecutions be limited to the

unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d

1010, 1015-1016 (D.C. Cir. 2001) (internal citations omitted). *See also Gatling*, 96 F.3d at 1520

("Our case law makes clear that a conspiracy's purpose should not be defined in too narrow or

specific terms.").

Counts Two through Five of the Indictment are set forth as follows:

Count Two–"Conspiracy to Obstruct Justice in violation of Title 18, United States Code,
Sections 2, 371, and 1515(c)(2)"

1.      That the Introduction to this Indictment is reintroduced and realleged into this

Count of the Indictment.

2.    That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, attempted to cause, and did cause, Witness A to alter Witness A's testimony and be untruthful about the Club U matter.

Count Three–"Conspiracy to Obstruct Justice in violation of Title 18, United States Code, Sections 2, 371, and 1515(c)(2)"

1.    That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.    That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, attempted to cause, and did cause, Witness B to alter Witness B's testimony and be untruthful about the Club U matter.

Count Four–"Conspiracy to Obstruct Justice in violation of Title 18, United States Code, Sections 2, 371, and 1515(c)(2)"

1.    That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.    That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R. BROWN and MILAGROS L. MORALES, among other things, attempted to cause, and did cause, Witness C to alter Witness C's testimony and be untruthful about the Club U matter.

Count Five–"Conspiracy to Obstruct Justice in violation of Title 18, United States Code, Sections 2, 371, and 1515(c)(2)"

1.    That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.

2.    That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abettors, conspired with each other to corruptly attempt to obstruct and influence an official proceeding; that is, ERICK R.

> BROWN and MILAGROS L. MORALES, among other things, (a) provided false
> information to the assigned AUSA about the ongoing Club U investigation in
> order to convince her to agree that they could obtain an arrest warrant for Jerome
> Jones for murder one while armed, and (b) failed to provide exculpatory evidence
> to the assigned AUSA about the ongoing Club U investigation.

Indictment at 8, 9, 10, and 11. In this case, the language of the Indictment is clear that the

conspiracy charges set forth in Counts Two through Five demonstrate only one purpose or goal,

repeated in the text of each Count: to "corruptly attempt to obstruct and influence an official

proceeding," related to the "Club U matter," otherwise called the "Club U investigation." While

the Government argues that Defendants in fact entered into separate agreements with the separate

purposes of influencing Witnesses A, B, C, or themselves making misleading representations to

the assigned AUSA with respect to the Club U investigation, the Government misinterprets

Defendants' distinct overt acts in furtherance of a single conspiracy as distinct conspiracies. The

Court further notes that the multiple "conspiracies" charged by the Government involve the same

Defendants acting over the course of the same time period (February of 2005) in the same

geographical area.

Perhaps most importantly, the multiple conspiracies charged in Counts Two through Five

of the Indictment in this case are for violations of the *same* general conspiracy statute (18 U.S.C.

§ 371) to violate the *same* underlying statute (18 U.S.C. § 1512(c)(2)), and thus are not directly

analogous to multiple conspiracy charges in any other case encountered by the Court or either of

the Parties. In this case, Counts Two through Five are (1) separate conspiracy charges (2) to

violate the same general and underlying specific statutory provisions (3) for different acts (4)

with discernibly the same underlying objective of corruptly influencing the Club U investigation

through their alleged efforts to have an arrest warrant issued for Jerome Jones. Cases in which

14

one conspiratorial agreement was found to legitimately support more than one conspiracy charge specifically hold that the existence of distinct statutory violations for which Congress intended separate punishments alleviated any multiplicity concerns. *See Albernaz v. United States*, 450 U.S. 333, 335-40 (1981) (holding that a conviction for separately charged counts of conspiracy to import marijuana and conspiracy to distribute marijuana did not violate the Double Jeopardy Clause, as Congress intended these statutes to be separately punished); *American Tobacco Co. v. United States*, 328 U.S. 781, 788 (1946) (holding that "§§ 1 and 2 of the Sherman Act require proof of conspiracies which are reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap."); *Harris*, 959 F.2d at 251-52 ("[H]ere we have two separate statutory provisions violated by one agreement, and therefore it is clear that Congress intended separate punishments for violators of both."). First *American Tobacco* and later *Albernaz* in fact explicitly distinguished *Braverman* on the basis of the distinct conspiracy charges at issue. *See Albernaz*, 450 U.S. at 339 ("Unlike the instant case or this Court's later decision in *American Tobacco*, the conspiratorial agreement in *Braverman*, although it had many objectives, violated but a single statute."); *American Tobacco*, 328 U.S. at 788 ("In contrast to the single conspiracy described in [*Braverman*] in separate counts, all charged under the general conspiracy statute, § 37, Criminal Code, 35 Stat. 1096, 18 U.S.C. § 88, 18 U.S.C.A. § 88, we have here separate statutory offenses, one a conspiracy in restraint of trade that may stop short of monopoly, and the other a conspiracy to monopolize that may not be content with restraint short of monopoly. One is made criminal by § 1 and the other by § 2 of the Sherman Act."). Counts Two through Five of the Indictment in the instant case all allege the exact same general conspiracy charge (18 U.S.C. § 371) to violate the exact same underlying

15

statute (18 U.S.C. § 1512(c)(2)), in contrast to *Albernaz, American Tobacco*, and even

*Braverman* itself, wherein the Court admitted that "[w]here each of the counts of an indictment

alleges a conspiracy to violate a *different* penal statute, it may be proper to conclude, in the

absence of a bill of exceptions bringing up the evidence, that several conspiracies are charged

rather than one, and that the conviction is for each." *Braverman*, 317 U.S. at 52 (emphasis

added).

Accordingly, while Counts Two, Three, Four, and Five have been dismissed pursuant to

the Court's granting [13] Defendants' Motion to Dismiss Counts Two Through Five for Failure

to Allege Cognizable Conspiracies to Violate 18 U.S.C. § 1512(c)(2), the Court shall in the

alternative grant [14] Defendants' Motion to Dismiss Counts Two Through Five of the

Indictment for Unconstitutional Multiplicity.  The Court holds that Counts Two, Three, Four, and

Five are unconstitutionally multiplicitous such that the Court would allow the Government to

elect only one of the aforementioned counts in the Indictment and dismiss the others if all four

had not already been dismissed on other grounds.

    C.    *The Court shall DENY AS MOOT both [11] Defendants' Motion to Dismiss*
           *Counts Two Through Five for Failure to State an Offense Under 18 U.S.C. §§ 371*
           *and 1512(c) and [12] Defendants' Motion to Dismiss Counts Two Through Five*
           *of the Indictment for Failure to Allege an Essential Element.*

As the Court's granting Defendants' [13] [14] Motions results in the dismissal of Counts

Two, Three, Four, and Five, the Court need not address the issues raised in [11] Defendants'

Motion to Dismiss Counts Two Through Five for Failure to State an Offense Under 18 U.S.C. §§

371 and 1512(c) and [12] Defendants' Motion to Dismiss Counts Two Through Five of the

Indictment for Failure to Allege an Essential Element, which request dismissal of the same

Counts on alternate grounds.  Accordingly, the Court shall DENY AS MOOT [11] Defendants'

Motion to Dismiss Counts Two Through Five for Failure to State an Offense Under 18 U.S.C. §§
371 and 1512(c) and [12] Defendants' Motion to Dismiss Counts Two Through Five of the
Indictment for Failure to Allege an Essential Element.

> D.    *The Court shall DENY [10] Defendants' Motion to Dismiss Counts One Through*
>       *Eight of the Indictment for Lack of Specificity with respect to the remaining*
>       *Counts (Counts One, Six, Seven, and Eight).*

As Counts Two, Three, Four, and Five of the Indictment shall be dismissed pursuant to

Defendants' [13] [14] Motions to Dismiss, the Court shall assess the arguments set forth in [10]

Defendants' Motion to Dismiss Counts One Through Eight of the Indictment for Lack of

Specificity only with respect to the remaining Counts–Counts One, Six, Seven, and Eight of the

Indictment. In Defendants' Motion to Dismiss for Lack of Specificity, Defendants argue that the

Counts as set forth in the Indictment violate Federal Rule of Criminal Procedure 7(c)(1) as well

as the Fifth and Sixth Amendments because

> each charge fails to allege the facts that constitute the offense with sufficient specificity to
> put Defendants [1] on notice as to what they must be prepared to defend at trial and [2] to
> ensure that the prosecution is not free to fill in the details of its case with facts that the
> grand jury never considered. The paucity of specific factual allegations also makes the
> Indictment insufficient to prevent surprise at trial,[2] or [3] to permit Defendants to plead
> double jeopardy in the event of a future prosecution.

Defs.' [10] Mem. at 3-4.

> Federal Rule of Criminal Procedure 7(c)(1) states in relevant part:

> The indictment or information must be a plain, concise, and definite written statement of
> the essential facts constituting the offense charged and must be signed by an attorney for
> the government. It need not contain a formal introduction or conclusion. A count may
> incorporate by reference an allegation made in another count. A count may allege that the
> means by which the defendant committed the offense are unknown or that the defendant

---

[2] The Court considers this "surprise at trial" argument to be part and parcel of
Defendants' notice concern.

> committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1). The requirements that an indictment must meet to survive a pretrial challenge to its sufficiency are well-established. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). *See also United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980) ("An indictment is sufficient if it clearly informs the defendant of the precise offense of which he is accused so that he may prepare his defense. The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment."); *United States v. Dale*, 782 F. Supp. 615, 621 (D.D.C. 1991) ("In order to meet the requirements of the Sixth Amendment, an indictment must contain every element of the offense charged and must fairly apprise the accused of the conduct allegedly constituting the offense so as to enable him to prepare a defense against those allegations."). Furthermore, "[a]dherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d at 1016 (citing *Russell v. United States*, 369 U.S. 749, 768-71 (1962)). "The . . . generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *Conlon*, 628 F.2d at 155.

The Court shall address Defendants' arguments with respect to Count One separately

18

from those with respect to Counts Six through Eight. Count One of the Indictment, titled "Count

One–Conspiracy Against Civil Rights in violation of Title 18, United States Code, Section 241,"

is set forth as follows:

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.
2.  That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD and while acting under color of law, did willfully conspire with each other to injure, oppress, threaten, and intimidate, Jerome Jones in his free exercise and enjoyment of a right and privilege secure to Jerome Jones by the Constitution and laws of the United States, that is, the Fourth Amendment right to be free from unreasonable seizure by persons acting under color of law.

Indictment at 7.

A conspiracy, "an inchoate offense, the essence of which is an agreement to commit an

unlawful act," "need not be shown to have been explicit. It can instead be inferred from the facts

and circumstances of the case." *Iannelli v. United States*, 420 U.S. 770, 777 & n.10 (1975). "In

order to prove that an agreement existed, the government need only show that the conspirators

agreed on "'the essential nature of the plan,'" not that they 'agreed on the details of their criminal

scheme.'" *Gatling*, 96 F.3d at 1518 (quoting *United States v. Treadwell*, 760 F.2d 327, 336

(D.C. Cir. 1985) (quoting *Blumenthal v. United States*, 332 U.S. 539, 557 (1947)), *cert. denied*,

474 U.S. 1064 (1986)). "It is well established that an agreement sufficient to support a

conspiracy conviction can be inferred from circumstantial evidence." *Gatling*, 96 F.3d at 1518.

Specifically, a conspiracy against civil rights as set forth in 18 U.S.C. § 241 is defined as "two or

more persons conspir[ing] to injure, oppress, threaten, or intimidate any person in any State,

Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right

or privilege secured to him by the Constitution or laws of the United States, or because of his

19

having so exercised the same[.]" 18 U.S.C. § 241.

Assessing Count One as set forth above, it is clear that the language of Count One tracks

that of the statute at issue–18 U.S.C. § 241. Furthermore, Count One expressly incorporates the

Introduction to the Indictment, which sets forth allegations demonstrating that Defendants

allegedly participated in an overall plan centered around the substantiation of an arrest warrant

for Jerome Jones on a murder one while armed charge despite initial witness testimony that

allegedly contradicted the forensic evidence in the case. *See, e.g.*, Indictment at 2 ("The cause of

(Terrance Brown's) death was an approximately three and one half inch stab wound to his

heart."); 3 ("On February 15, 2005, based in part on these interviews, ERICK R. BROWN and

MILAGROS L. MORALES presented an arrest warrant for Jerome Jones to a supervisory AUSA

in the D.C. USAO . . . charg[ing] Jerome Jones with murder one while armed. . . . [T]he

assigned AUSA did not sign the draft arrest warrant and requested that she be able to interview

Witness A and Witness B. ERICK R. BROWN refused to bring Witness A and Witness B in to

speak with the assigned AUSA"); 4-5 ("MILAGROS L. MORALES told Witness A that ERICK

R. BROWN and MILAGROS L. MORALES were trying to alter Witness B's testimony . . .

because a wound from a box cutter did not fit with the forensic evidence. In addition, after

MILAGROS L. MORALES convinced Witness A to alter Witness A's description of what

Witness A had seen at Club U on February 13, 2005, MILAGROS L. MORALES told Witness A

not to 'fuck up' the investigation."). Such actions could certainly be deemed to "injure, oppress,

threaten, or intimidate" Jerome Jones in the "free exercise or enjoyment of any right or privilege

secured to him by the Constitution or laws of the United States." Accordingly, Defendants'

Motion to Dismiss Count One of the Indictment for lack of specificity shall be denied.

20

Counts Six, Seven, and Eight of the Indictment, which all allege violations of 18 U.S.C.

§§ 2, 1001, are set forth specifically as follows:

[Count Six]

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.
2.  That on or about February 16, 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abetters [*sic*], did knowingly and willfully, make, or cause to be made, a materially false, fictitious, or fraudulent, statement or representation, in a matter within the jurisdiction of the executive, legislative, or judicial, branch of the Government of the United States, specifically, ERICK R. BROWN and MILAGROS L. MORALES caused Witness A to provide material and untruthful information about the Club U matter.

[Count Seven]

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.
2.  That on or about February 17, 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abetters [*sic*], did knowingly and willfully, make, or cause to be made, a materially false, fictitious, or fraudulent, statement or representation, in a matter within the jurisdiction of the executive, legislative, or judicial, branch of the Government of the United States, specifically, ERICK R. BROWN and MILAGROS L. MORALES caused Witness B to provide material and untruthful information about the Club U matter.

[Count Eight].

1.  That the Introduction to this Indictment is reintroduced and realleged into this Count of the Indictment.
2.  That in or about February 2005, within the District of Columbia, defendants ERICK R. BROWN and MILAGROS L. MORALES, then members of the MPD, as principals and as aiders and abetters [*sic*], did knowingly and willfully, make a materially false, fictitious, or fraudulent, statement or representation, in a matter within the jurisdiction of the executive, legislative, or judicial, branch of the Government of the United States, specifically, ERICK R. BROWN and MILAGROS L. MORALES provided material and untruthful information about their investigation of the Club U matter to the assigned AUSA.

Indictment at 12, 13, 14. Whether or not these Counts and the Introduction to the Indictment

21

incorporated therein adequately allege violations of 18 U.S.C. § 1001 is a closer question due to

the nature of § 1001. More specifically, Defendants allege that an Indictment charging a

violation of 18 U.S.C. § 1001 must include the false statements themselves, whereas the

Indictment "merely contains conclusory allegations that Defendants provided, or caused various

witnesses to the Club U incident to provide, untruthful information to an Assistant United States

Attorney (the 'AUSA'), without providing any detail about that information and how it was

false." Defs.' [10] Mem. at 1, 3. Defendants argue that with respect to Counts Six and Seven,

"nowhere does the Indictment identify a single statement or piece of information actually

provided to the AUSA by Witnesses A or B, let alone specify: (1) the specific false statements

provided to the AUSA; (2) what about those statements was false; or (3) how those statements

differed from the statements the witnesses gave in their videotaped interviews." *Id.* at 7.

Defendants argue with respect to Count Eight that the Indictment does not "specify any

affirmative, materially false representations made by Defendants to the AUSA." *Id.* at 9.

> Pursuant to 18 U.S.C. § 1001,
>
> whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>>
>> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>>
>> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

is subject to fine and/or imprisonment pursuant to the same. 18 U.S.C. § 1001(a). The Court

concludes, upon review of the case law, that no requirement exists in this circuit that the

Indictment include the precise "materially false, fictitious, or fraudulent statement or

representation," attributed to a particular defendant. *See United States v. Hubbell*, 177 F.3d 11,

13 (D.C. Cir. 1999) (holding that a § 1001 count which "sets forth the acts of falsification and concealment; the nature of the scheme by which these material facts were falsified and concealed; and the material facts . . . concealed" should not be dismissed for vagueness, and that the "charging language" may incorporate by reference the introduction to the indictment including such information); *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) ("[T]his Court does not believe that generally it is necessary to provide date, time, and place of each false statement or concealment and the persons involved." (internal quotation and citation omitted). *Cf. United States v. Clifford*, 426 F. Supp. 696, 702 (E.D. N.Y. 1976) ("This court declines to adopt a rule that would mandate dismissal of a § 1001 count as a matter of law in the absence of a verbatim transcript or a written statement.") (cited by Defendants). *But see United States v. Weinberger*, Civ. No. 92-235, 1992 U.S. Dist. LEXIS 14534 at *12 (D.D.C. September 29, 1992) (holding that an indictment charging 18 U.S.C. § 1001 need not state the questions posed to a defendant which elicited allegedly false statements, but stating in dicta and without further citation that "[u]nder § 1001, the indictment has to provide adequate notice of the wording of the statements alleged to be false."). While Defendants rely heavily on *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976) (*per curiam*), they do so too narrowly and without recognizing the degree to which *Nance* is limited by *United States v. Blackley*, 167 F.3d 543 (D.C. Cir. 1999). In *Nance*, the D.C. Circuit dismissed counts of an indictment charging violations of D.C. Code § 22-1301 ("obtaining something of value by false pretenses with intent to defraud") which did not "allege any of the factual particulars of the false representations which defrauded the victim." *Nance*, 533 F.2d at 700.

> The name of the victim, the date of the false representation, the amount involved and the
> date the sum was paid are all alleged, but as for the false representations which induced

the victims to part with their money, which are the very core of the offense, counts 4-11 of the indictment are content with alleging that the defendants "made and caused to be made the following representations to the following customers, knowing said representations were untrue . . ." and then fails to set forth any of the "representations" that allegedly "were untrue." (Emphasis added.) Counts 2 and 3 likewise fail to specify the false representations.

*Id.* at 700-01 (internal footnotes omitted). However, the D.C. Circuit in *Nance* ultimately notes

that "[i]t would have been relatively simple for the Government to incorporate the applicable

false pretense allegations of count 1 by reference to the remaining counts," *id.* at 702, and cites to

cases for the principle that more than the statutory charging language is sometimes required to

put a defendant on notice of the charge against him. *Id.* at 702 ("[I]n *United States v. Curtis*, 506

F.2d 985 (10th Cir. 1974), it was held that pleading the statutory language in a mail fraud case

without 'any fair indication of the scheme or artifice relied upon, or the false pretenses . . .

forming a part of it' was insufficient."). *Blackley*, pertaining to charges pursuant to 18 U.S.C. §

1001 against the former Chief of Staff to the Secretary of Agriculture regarding outside payments

received while serving in that position and his denial thereof, explicitly limited the holding in

*Nance*, because the Indictment in *Nance* promised to list "following representations" but did not

do so:

> Blackley says the indictment didn't adequately notify him of the nature of the charges against him. In particular, he argues that count one, which charged him with failure to disclose on his SF 278 for the year 1993 some $22,025 received that year, simply enumerated the 11 checks through which the money was received (with their dates and amounts), plus all four categories on the form ("Assets and Income," "Gifts, Reimbursement and Travel Expenses," "Liabilities," and "Agreements or Arrangements"). Thus it did not connect any of the checks to a specific box on the form. Blackley makes a similar argument as to the other counts, saying that the indictment left him uncertain as to exactly which of his various denials was contradicted by his receipt of the $22,025.
>
> Blackley cites *United States v. Nance,* 533 F.2d 699 (D.C. Cir. 1976). There the defective counts of the indictment accused the defendant of falsely making the

"following representations," but (amazingly) the representations did *not* follow; none was alleged. *Id.* at 700 n. 3. The present indictment plainly says that Blackley in his SF 278 falsely failed to disclose specified items of income. *Nance* gets Blackley nowhere.

*Blackley*, 167 F.3d at 549. In other words, the Indictment in *Nance* explicitly promised to include information which it plainly omitted, which did not occur in either *Blackley* or the instant case.[3]

Counts Six and Seven of the Indictment and the incorporated Introduction adequately designate the substance of the false representations Defendants allegedly caused Witnesses A and B to make, giving "fair indication" of the subject and context of said representations. *See, e.g.,* Indictment at 12, 13, 4 ("Among other things, MILAGROS L. MORALES told Witness A that they had a witness, Witness B, who said that Jerome Jones had a box cutter, but that they were 'trying to get [Witness B] away from saying box cutter and to get her to say knife-like object.' MILAGROS L. MORALES told Witness A that [Defendants] were trying to alter Witness B's testimony in this way because a wound from a box cutter did not fit with the forensic evidence. In addition, after MILAGROS L. MORALES convinced Witness A to alter Witness A's description of what Witness A had seen at Club U on February 13, 2005, MILAGROS L. MORALES told Witness A not to 'fuck up' the investigation."); 5 ("Witness B continued to say to the assigned AUSA what ERICK R. BROWN and MILAGROS L. MORALES had told Witness B to say, which was not truthful."). While a closer call with respect to Count Eight, the

---

[3] Despite Defendants' argument to the contrary, the statement in the Indictment that "Witness B's video-taped statement . . . which was different in three material respects from what Witness B told the assigned AUSA," Indictment at 5, is not analogous to the *Nance* indictment's reference to "following representations" which did not follow, as the Indictment in this case does not indicate that further detail will follow to flesh out the details of the referenced material discrepancies. *See* Defs.' [10] Mem. at 8.

Indictment sufficiently specifies the "material and untruthful information about [Defendants']

investigation of the Club U matter," Indictment at 14, that Defendants provided to the assigned

AUSA, specifically that Defendants "did not tell the assigned AUSA that they had talked to

Witness A and B about changing their testimony until confronted with the differences between

what Witness B said on her video-taped statement and what she was saying to the assigned

AUSA[,]" *id.* at 5, that "[Defendants] did not tell the assigned AUSA that they had talked to

Witness C about changing Witness C's testimony about what happened at Club U on February

13, 2005, until confronted by an MPD supervisor and the assigned AUSA[,]" *id.* at 5-6, and "by .

. . failing to disclose exculpatory evidence to . . . the assigned AUSA," *id.* at 6.

Furthermore, while the Court notes that Counts One, Six, Seven, and Eight of the

Indictment include sufficient detail to withstand a Motion to Dismiss,[4] and the Court recognizes

that a Bill of Particulars does not substitute for a lack of specificity in the Indictment, see *Conlon*,

628 F.2d at 156, the Court has nonetheless in its discretion granted [15] Defendants' Motion for

a Bill of Particulars such that Defendants shall be on notice of the specific alleged actions and

specifically worded false statements on which the Government shall rely in proving its case. *See*

*Anderson*, 441 F. Supp. 2d at 19-21 (granting the defendant's motion for a bill of particulars

specifying the contents of the alleged false statements: "[T]he Court concludes that Anderson is

entitled to know precisely which allegedly false statements the government relies on in each

paragraph, the way in which the government alleges them to be false, and when *approximately*

they were allegedly made."); *United States v. Trie*, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998) ("A

---

[4] "[T]he adequacy of the indictment in this case must be assessed on its own merits, quite apart from whether or not it was a model." *Conlon*, 628 F.2d at 156.

defendant faced with false statements charges should not have to waste precious pre-trial

preparation time guessing which statements he has to defend against or which contributors may

be witnesses against him at trial when the government knows precisely the statements on which it

intends to rely and can easily provide the information. The government must provide [in a bill of

particulars] information as to exactly what the false statements are, what about them is false, who

made them, and how Mr. Trie caused them to be made."). The Court further notes that a Bill of

Particulars binds the Government both in terms of its adjudication of this case and for Double

Jeopardy purposes. *See United States v. Slaughter*, 89 F. Supp. 205, 207 (D.D.C. 1950) ("The

function of a bill of particulars is to enlarge an indictment so that the defendant may be more

specifically informed of the nature of the charge against him. It strictly limits the prosecution to

proof within the area of the bill but it does not require disclosure of the evidence by which the

government expects to prove its case."); *Jackson v. United States*, 359 F.2d 260, 263 n.1 (D.C.

Cir. 1966) (variance between proof and a bill of particulars may be grounds for reversal if the

defendant is prejudiced).

      Finally, with respect to Defendants' subtle (but somewhat undeveloped) argument that

"the prosecution is not free to fill in the details of its case with facts that the grand jury never

considered," Defs.' [10] Mem. at 4, the Court acknowledges Defendants' statement that "the

Indictment Clause of the Fifth Amendment protects a defendant from the risk that a jury could

convict on the basis of facts not presented to, or relied on, by the grand jury when it issued its

indictment." Defs.' [10] Mem. at 5 (citing *Russell*, 369 U.S. at 770; *United States v. Hitt*, 249

F.3d 1010, 1016 (D.C. Cir. 2001)). However, it is clear to the Court from the Court's discussion

with counsel for the Government on the record at the motions hearing on June 26, 2007, that the

information contained in the Indictment as well as that to be set forth in the Government's Bill of

Particulars was fully considered by the grand jury in this case, as transcripts of Witnesses A, B,

and C's statements during the D.C. Superior Court grand jury proceedings with respect to the

Terrance Brown murder investigation were included in the evidence provided to the instant

United States District Court grand jury, and a summary witness relayed to the instant grand jury

(among other issues) testimony by the Supervisory AUSA to whom false statements were

allegedly made by Defendants.

     *E.*    *Speedy Trial Act*

     Pursuant to the Speedy Trial Act, 18 U.S.C. § 3161,

> In any case in which a plea of not guilty is entered, the trial of a defendant charged
> in an information or indictment with the commission of an offense shall commence
> within seventy days from the filing date (and making public) of the information or
> indictment, or from the date the defendant has appeared before a judicial officer of the
> court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). However, certain specified "periods of delay shall be excluded in

computing the time within which an information or an indictment must be filed, or in computing

the time within which the trial of any such offense may commence," including "delay resulting

from any pretrial motion, from the filing of the motion through the conclusion of the hearing on,

or other prompt disposition of, the motion." 18 U.S.C. § 3161(h)(1)(F). Furthermore, the Court

may *sua sponte* grant a continuance if a continuance serves the ends of justice and outweighs the

best interest of the public and defendant in a speedy trial:

> Any period of delay resulting from a continuance granted by any judge on his own
> motion or at the request of the defendant or his counsel or at the request of the attorney
> for the Government, if the judge granted such continuance on the basis of his findings
> that the ends of justice served by taking such action outweigh the best interest of the
> public and the defendant in a speedy trial. No such period of delay resulting from a
> continuance granted by the court in accordance with this paragraph shall be excludable

under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A). The factors "a judge shall consider in determining whether to grant a continuance" include a determination of "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(8)(B)(ii). Finally, "[f]or a case involving multiple defendants, the Act excludes '[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.'" *United States v. Sanders*, 485 F.3d 654, 657 (D.C. Cir. 2007) (quoting 18 U.S.C. § 3161(h)(7)). The Supreme Court recently clarified that the twin goals of the operation of the Speedy Trial Act are the interests of the public and of the defendant in a speedy trial. *See Zedner v. United States*, 126 S. Ct. 1976, 1984 (2006), *cited by Sanders*, 485 F.3d at 655.

Motions to dismiss were promptly filed in this case on April 11, 2007. The Court established a briefing schedule on April 16, 2007 (such that the Government's omnibus Opposition was due May 11, 2007, and Defendants' Replies were due May 23, 2007) to reflect the complicated legal issues raised. In fact, Defendants' six pretrial motions (discussed at length above) set forth a number of complex issues requiring extensive research and analysis by all Parties and the Court prior to the motions hearing held on June 26, 2007, as well as additional research and analysis by the Court thereafter based on the Parties' arguments and representations during the motions hearing. While *Sanders* discussed the necessity of the district court

29

"contemplating reserving time under the Act" to reserve time *prior* to the filing of motions, *see id.* at 658-59, distinguished from this case in which the Court herein is explicitly finding that the Speedy Trial Act is tolled *during the pendency* of Defendants' six pretrial motions, the Court nonetheless notes that this is not a case in which any party's "continuous and leisurely preparation of motions" or response thereto was used for "infinite delay." *Sanders*, 485 F.3d at 658 (quoting *United States v. Wilson*, 835 F.2d 1440, 1444 (D.C. Cir. 1987)). Accordingly, as this circuit has encouraged placing speedy trial findings on the record at or near the time of any "continuance," *Sanders*, 485 F.3d at 659, the Court shall as an extra precaution here indicate that the complexity of the factual and legal issues raised in Defendants' pretrial motions is such that "the ends of justice served by" the briefing schedule set forth by the Court to allow the Defendants' pretrial motions to be fully and adequately considered "outweigh the best interest of the public and the defendant[s] in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

### III. CONCLUSION

Based on the aforementioned reasoning, the Court shall GRANT [13] Defendants' Motion to Dismiss Counts Two Through Five for Failure to Allege Cognizable Conspiracies to Violate 18 U.S.C. § 1512(c)(2); GRANT in the alternative [14] Defendants' Motion to Dismiss Counts Two Through Five of the Indictment for Unconstitutional Multiplicity; DENY AS MOOT [11] Defendants' Motion to Dismiss Counts Two Through Five for Failure to State an Offense Under 18 U.S.C. §§ 371 and 1512(c); DENY AS MOOT [12] Defendants' Motion to Dismiss Counts Two Through Five of the Indictment for Failure to Allege an Essential Element; and DENY as to the remaining Counts One, Six, Seven, and Eight [10] Defendants' Motion to Dismiss Counts One Through Eight of the Indictment for Lack of Specificity.

Accordingly, Counts Two, Three, Four, and Five of the Indictment shall be DISMISSED.

Trial shall go forward on remaining Counts One, Six, Seven, and Eight.

An Order accompanies this Memorandum Opinion.


Date:   July 9, 2007


                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge