UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
    v.                              )    Crim. No. 1:07-cr-00075-CKK
                                    )
ERICK R. BROWN, and                 )
MILAGROS L. MORALES,                )
                                    )
         Defendants.                )
_____ )

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE*** 

      The Court should deny the government's motion *in limine* because (1) Defendants Erick R. Brown and Milagros L. Morales ("Defendants") do not intend to make the majority of the arguments at issue in the government's motion, rendering the motion moot,[1] and (2) two potential arguments that the government seeks to exclude, the use of the term "liar" in reference to a witness and the use of metaphors or anecdotes to make a point, are legitimate techniques in closing argument that the Court should permit.

      At the outset, counsel for Detective Brown take serious issue with the government's use of isolated snippets of argument from Mr. Weingarten's summation in <u>United States v. Douglas Jemal</u> as examples of purportedly improper arguments. The Jemal trial was a hard-fought six week trial that culminated in a two-day closing argument delivered by Mr. Weingarten on behalf of D.C. real estate developer Douglas Jemal. The government was extremely aggressive in the prosecution of Mr. Jemal and had made numerous prejudicial arguments during the trial, including referring to Mr. Jemal as a "common thief" in its opening

---

[1] The government did not seek Defendants' position on these issues before filing the motion, which would have obviated the need to litigate about many of the potential arguments at issue.

statement. Mr. Weingarten's closing argument was vigorous advocacy in which he responded directly and forcefully to the aggressive tactics of the prosecution. However, the closing argument was completely ethical and proper. The government has isolated out of context a handful of arguments over the two-day summation in an offensive effort to demonstrate that counsel somehow does not follow the rules or is in need of close supervision by the Court. Yet, the prosecutors in the Jemal trial did not even object to the arguments now highlighted by the government in this case. The Court should ignore this attempt to impugn the integrity of Detective Brown's counsel. All defense counsel in this case are experienced, understand well the boundaries of vigorous advocacy and are in no need of a lesson from the prosecutor.

The majority of the government's motion is moot because the defense has no intention of making the arguments raised by the government. First, the government seeks to prevent counsel from referring to biographical information about themselves in front of the jury. United States's Motions In Limine ("Gov't MIL") at 1. Counsel have no intention of doing so. However, the example cited from the Jemal trial in which Mr. Weingarten stated that he had "enormous respect" for the prosecutors' office because he "used to hold such an office" was not improper at all. Id. at 2. Certainly, that argument did nothing to trigger the government's concerns here, that defense counsel might "vouch[] for how defendants conducted themselves in the underlying homicide investigation." Id.

Second, the government seeks to prevent counsel from making reference to the government's motivation for bringing this action. Id. Counsel have no intention of doing so. Again, however, the example cited by the government from the Jemal trial did not involve any accusation that the government brought the case for improper motives. The thrust of the

argument was that prosecutors are "human," who are "not always right" and "can make mistakes." Tr. 4486.

Third, the government seeks to prevent counsel from making any reference to the September 15, 2005 Memorandum that has been filed under seal and <u>ex parte</u> with the Court. Gov't MIL at 3. Again, counsel have no intention of doing so. Although we can certainly speculate, the defense is unaware of the contents of the memorandum and we do not intend to refer to it in any argument.

In sum, with respect to the potential arguments set forth above, the Court should deny the government's motion as moot because the defense has no intention of making those arguments.

The Court should deny the remainder of the government's motion because the arguments it seeks to preclude are entirely proper. The government seeks to prevent counsel from expressing their personal opinions about witness credibility, but cites several examples from the Jemal trial in which Mr. Weingarten referred to the government's main witness as a "liar" or argued that he lied on the witness stand. <u>See</u> Gov't MIL at 2-3. There is a significant difference between these two types of arguments. Defense counsel agree that it is improper to express personal opinions about a witness's credibility or lack thereof to the jury, and have no intention of doing so in this case.[2] However, it is completely appropriate to argue based on the evidence that a witness is a liar, lied on the stand, or was caught in a lie at trial. The

---

[2] The government cites only one example from the Jemal trial in which Mr. Weingarten stated regarding a witness: "I believed him." Gov't MIL at 3. However, the witness at issue was a government witness and Mr. Weingarten immediately followed that statement with the statement that "there's no evidence in this case that there's anything but truthful testimony from [the witness]." Tr. 4520. Although the "I believed him" argument may have been an inadvertent slip that contravened the rule against vouching for witnesses, no harm was done given that it was a government witness. The Jemal prosecutors certainly did not object to the argument.

government's suggestion that such argument violates the rule on vouching for witnesses is baseless.

The D.C. Circuit has squarely held that the use of terms like "lies," "lying" and "liar" are permissible in closing argument:

> "Lies" and "lying" are hard words. But this was closing argument, not a polite social conversation. . . . The prosecutor had every right to argue that [the defendant] had not told the truth. . . . [Is] there any reason in law why the words "lie" and "lying" should be banned from the vocabulary of summation, particularly in cases that turn on the defendant's credibility? We conceive of none, so long as the prosecutor sticks to the evidence and refrains from giving his personal opinion.

United States v. Dean, 55 F.3d 640, 665 (D.C. Cir. 1995); see also United States v. Donato, 99 F.3d 426, 432 (D.C. Cir. 1996) (finding that Dean had "foreclosed" the argument that using the term "liar" could constitute reversible error); United States v. Gartmon, 146 F.3d 1015, 1024 (D.C. Cir. 1998) (finding no error in describing defendant as a "liar" or his statements as "lies"); United States v. Lee, 506 F.2d 111, 117 (D.C. Cir. 1974) (holding that the prosecution had the right to discuss "the veracity of the witnesses" in summation).

In this case, all of the examples that the government cites from the Jemal trial, in which Mr. Weingarten used the terms "lie," "liar" or "lying," were squarely based on the evidence elicited at trial, not on any improper personal opinion. Should the evidence elicited at this trial establish that any of the government's witnesses were untruthful in their testimony, defense counsel could appropriately use the same terms in summation here. Accordingly, the Court should deny the government's motion to the extent it seeks to prevent the use of terms such as "liar," "lies," or "lying" in reference to witnesses who testify untruthfully.

Finally, the government asks the Court to preclude counsel from presenting anecdotes, incidents or personalities from counsels' past to the jury in summation. Gov't MIL at

2. As an example of such a purportedly improper argument, the government cites the following portion of Mr. Weingarten's closing argument from the Jemal trial:

> Last, I want to share with you a story I once heard from a teacher. It's funny where you get wisdom, it stays with you. A teacher I had many, many years ago told us the story about when she lived in the old country there was a time of danger, where she was at great personal peril, and a total stranger came out of the blue and saved her life. And she came to the States, grew up, never had the opportunity to thank this individual or ever speak to this individual again.
>
> And she developed a philosophy, and the philosophy goes like this: You live on this earth, we wake up, we work, we raise a family, we eat, and go to the bathroom, we do all the things that we normally do, and then for virtually everybody, you get called to do something extraordinary. You get called to get off the beaten track and perform a task that has profound implications.
>
> And since I've become a lawyer, I always believed her story applies to jury duty. Because after all, you're going to deliberate this case and you're going to deliver a verdict that has profound implications for three people. I have no doubt, that you'll do it with the same courage that the individual in the old country had when he saved my former teacher.

Tr. 4645-46. The government's claim that this argument somehow improperly interjected "personal history" into the case is utterly without merit. Obviously, the argument was simply a metaphor used as a rhetorical flourish to stress to the jury, at the very end of the two day closing argument, the importance of their task to a criminal defendant. The argument was not improper in any respect.

More fundamentally, there is nothing improper about using metaphors or anecdotes in closing argument to convey a point to the jury. The government cites no authority indicating that such argument is improper. In reality, the use of such rhetorical devices in

closing argument is commonplace and effective.  The Court should deny the government's motion to preclude such argument in this case.

                Respectfully submitted,

                /s/

                Reid H. Weingarten (D.C. Bar #365893)
                Brian M. Heberlig (D.C. Bar #455381)
                Robert A. Ayers (D.C. Bar #488284)
                Steptoe & Johnson LLP
                1330 Connecticut Avenue, N.W.
                Washington, D.C.  20036-1795
                (202) 429-3000

                Counsel for Erick R. Brown


                David Schertler
                Danny Onorato
                Schertler & Onorato, LLP
                601 Pennsylvania Avenue, N.W.
                North Building - 9th Floor
                Washington, D.C.  20004-2601
                (202) 628-4199

                Counsel for Milagros L. Morales

Dated:  July 26, 2007