UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 1:07-cr-00075-CKK |
| ERICK R. BROWN, and MILAGROS L. MORALES, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' RESPONSE TO THE GOVERNMENT'S
MOTION IN LIMINE TO PRECLUDE IMPEACHMENT EVIDENCE**

Defendants Erick R. Brown and Milagros L. Morales ("Defendants") submit this memorandum of law in response to the United States's Submission Regarding Counsel's Cross Examination Of Witness ("Gov't Submission"). Defendants have proffered classic impeachment evidence relating to government witness Jennifer Anderson's character for truthfulness. The Defendants seek to question Ms. Anderson about accusations made by a District of Columbia Public Defender Service attorney (the "PDS Attorney") that she intentionally withheld Brady evidence relating to a government witness. Defendants have established a good faith basis to ask Ms. Anderson about this evidence and the evidence clearly goes to her character for truthfulness.

In its response, the government does not dispute that a prosecutor's failure to disclose Brady material is relevant to her character for truthfulness. Instead, the government offers Ms. Anderson's version of the facts and attempts to argue that the issue is not relevant to truthfulness because Ms. Anderson did not commit any violation. However, the issue before the

Court is whether there is a good faith basis to ask Ms. Anderson about this incident. Based on the allegations by the PDS Attorney, such a good faith basis unquestionably exists.[1]

Therefore, the Court should permit Defendants to question Ms. Anderson regarding this allegation pursuant to Rule 608(b).

I.  **INTRODUCTION**

Defendants seek to elicit testimony from Ms. Anderson regarding her alleged failure to disclose Brady evidence to the defendant in United States v. Harry Ellis, Cr. No. 2005-FEL-001467. During the trial of Mr. Ellis, the government called Mr. Paul Rangolan as a cooperating witness. Prior to trial, Ms. Anderson provided a Brady disclosure letter to the PDS Attorney dated February 1, 2006, relating to Mr. Rangolan. Defense Exhibit ("DX") 090A. In that letter, Ms. Anderson disclosed that Mr. Rangolan had two prior convictions, one in 1990 and one in 1997. Id. Months after Mr. Ellis was convicted at trial, the government sent his the PDS Attorney a letter dated June 21, 2006, which contained additional Brady material relating to Mr. Rangolan during the 1990-1997 time period. DX 090B. Specifically, the government's June 21, 2007 Brady letter disclosed that Mr. Rangolan was an FBI informant between 1990 and 1997, during which time he received $30,450, a declination of prosecution from the government for a fraudulent tax scheme in 1992 and various other benefits relating to criminal conduct between 1990 and 1997. Id.

---

[1] Indeed, in the prior sealed litigation before the Court regarding alleged incidents involving Detective Brown, Detective Brown offered substantive factual response to each and every allegation made by the government, which demonstrated that none of the issues were relevant to his character for truthfulness. However, the government took the position that Detective Brown's substantive defenses were irrelevant, and that he had a good faith basis to ask the questions because of unproven allegations made by other Assistant United States Attorneys. The Court is faced with precisely the same situation here, except that the allegations were made by a PDS attorney and disputed by the U.S. Attorney's Office.

In response to the government's failure to disclose this Brady evidence, the PDS Attorney filed a Motion To Dismiss Or For Other Sanction For Brady Violations And Request For An Evidentiary Hearing ("Ellis Motion"). DX 076A. In that motion, the PDS Attorney noted that in her February 1, 2006 letter, Ms. Anderson identified "the event in 1990 that apparently sparked Mr. Rangolan's employ by the FBI and the event that apparently terminated his employ in 1997, but nothing about his actual employment in the middle . . . ." Id. at 3. The PDS Attorney alleged that the government had actual knowledge of the Brady material and failed to disclose it to defense counsel. Indeed, the PDS Attorney represented that he had knowledge of a witness "who will prove that at least one prosecutor in this case had actual knowledge of this Brady information before Mr. Ellis' trial and at the time of the February 1, 2006 letter." Id. at 5. Ms. Anderson's response to this allegation indicates that she is the prosecutor to whom he was referring. DX 077 at 29 n.29 (referencing a conversation with Rangolan's attorney during the Ellis trial regarding a 1995 tax evasion conviction that was not disclosed to Ellis' counsel until after the Ellis trial, in the June 21, 2006 Brady/Giglio letter).

In the alternative, the PDS Attorney alleged that Ms. Anderson's failure to disclose Brady evidence was "grossly incompetent given the length, nature, and extent of Mr. Rangolan's relationship and the numerous benefits he received." Id. at 4. The PDS Attorney further alleged that "[t]he vast scope of Brady information about Mr. Rangolan, . . . shows at best a willful blindness that weighs in favor of dismissal. Id. at 14.

II.     ARGUMENT

    A.     **Defendants Have a Good Faith Basis to Question Ms. Anderson Regarding Her Failure To Disclose Brady Information**

Defendants are entitled to question Ms. Anderson about an incident reflecting negatively on her character for truthfulness if they have a good faith basis for the inquiry. See United States v. Whitmore, 359 F.3d 609, 621 (D.C. Cir. 2004) ("[c]ounsel . . . need only have a reasonable basis for asking questions on cross-examination which tends to incriminate or degrade the witness") (citations and internal quotation marks omitted); United States v. Sampol, 636 F.2d 621, 658 (D.C. Cir. 1980) (in the context of cross-examination regarding prior bad acts, "[t]he general rule . . . is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates") (quotation omitted). The allegation that Ms. Anderson intentionally failed to disclose Brady evidence to a defendant, made by the PDS Attorney and the subject of ongoing litigation, establishes Defendant's good faith basis to question Ms. Anderson about her alleged Brady violation. Indeed, Defendants are entitled to rely on representations of the PDS Attorney, just as the government has relied on the word of an Assistant United States Attorney as the good faith basis for its allegation that Detective Brown failed to disclose Brady evidence in a case.

    The government contends that it is clear from the pleadings that "the fact that Rangolan was CI for the FBI was not known to Anderson, Carroll or anyone else involved in the series of cases at issue in 2006." Gov't Submission at 2. However, as the Court noted during oral argument on Defendant Erick R. Brown's Motion In Limine To Preclude The Government From Inquiring Into Specific Instances Of Alleged Prior Misconduct, the fact that a testifying witness might have an alternate view of the facts does not preclude a party from questioning that witness when a good faith basis exists to do so. The PDS Attorney has alleged an intentional

Brady violation against Ms. Anderson, and has sought dismissal of the conviction and charges against his client because of the egregiousness of the violation. The matter is the subject of ongoing litigation in United States v. Ellis, 2005- FEL-001467, and the Court has yet to determine whether such a violation occurred. Thus, Defendants have a good faith basis to question Ms. Anderson about her alleged failure to disclose Brady material to a defendant.

      **B.**      **Under Rule 608, Defendants Are Entitled To Inquire About Specific Instances Of Conduct That Are Probative Of Character For Untruthfulness**

Rule 608(b) provides that "[s]pecific instances of conduct of a witness . . . may . . ., in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . ." Fed. R. Evid. 608(b). In order for an act to be probative of truthfulness or untruthfulness, it must be "characterized by an element of deceit or deliberate interference with a court's ascertainment of truth." United States v. Smith, 551 F.2d 348, 363 (D.C. Cir. 1976).

The government does not dispute that an intentional failed to disclose Brady evidence is probative of character for untruthfulness -- nor can it because it has argued that such a violation would clearly be probative of Detective Brown's character for untruthfulness. Instead, the government attempts to argue the merits of the allegations at issue in Ellis, contenting that Ms. Anderson did not actually commit an intentional Brady violation and, therefore, the allegation is not probative of truthfulness. Gov't Submission at 3. However, as discussed above, the government's alternate view of the facts does not negate Defendants' good faith basis for questioning Ms. Anderson about the intentional Brady violation alleged by the PDS Attorney in his pleading. If Ms. Anderson has an explanation for the incident, she can testify about it and Defendants must accept her answer without resort to extrinsic evidence.

Thus, Defendants should be permitted to question Ms. Anderson about the alleged <u>Brady</u> violation that bears directly on her character for truthfulness.[2]

### C. Questions Relating To Ms. Anderson's Alleged <u>Brady</u> Violation Should Not Be Excluded Pursuant To Rule 403

Under Rule 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." <u>United States v. Whitmore</u>, 359 F.3d 609, 619 (D.C. Cir. 2004) (quotation omitted). Rule 403 tilts, however, as do the rules as a whole, toward the admission of evidence in close cases; when performing the balancing test required under Rule 403, . . . the balance should be generally struck in favor of admission." <u>Id.</u> (internal quotation marks and citations omitted).

---

[2] In the Ellis motion, the PDS Attorney argued in the alternative that if Ms. Anderson did not have actual knowledge of the <u>Brady</u> evidence she failed to disclose, her <u>Brady</u> violation was a result of an intentional effort to avoid learning about the evidence when she had overwhelming notice that such evidence existed. Ellis Motion at 14. The government contends that a <u>Brady</u> violation committed "through a failure of due diligence" does not reflect a witnesses untruthfulness. Gov't Submission at 3. However, when such a "failure of due diligence" is a result of willful blindness, the Brady violation is probative of untruthfulness. As an assistant United States Attorney, Ms. Anderson had a "duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including police," <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995), and to "search accessible files to find requested exculpatory material." <u>Hollman v. Wilson</u>, 158 F.3d 177, 181 (3d Cir. 1998). When Ms. Anderson sent the February 1, 2006 letter to Mr. Ellis' counsel, she effectively represented that she had met her obligation to discover <u>Brady</u> evidence relating to that case. The PDS Attorney, however, alleges that she failed to inquire about the existence of additional <u>Brady</u> evidence despite being on notice that such evidence likely existed. If true, Ms. Anderson's effort to avoid learning about evidence helpful to the defense, despite her representation that she had disclosed all <u>Brady</u> evidence, would go directly to Ms. Anderson's character for untruthfulness. <u>See</u> <u>United States v. Mellen</u>, 393 F.3d 175, 181 (D.C. Cir. 2005) (conscious avoidance or "willful blindness" is the equivalent of actual knowledge) (citing <u>United States v. Reyes</u>, 302 F.3d 48, 54-55 (2d Cir. 2002)).

The government argues that Defendants should not be permitted to question Ms. Anderson about her alleged <u>Brady</u> violation in <u>Ellis</u> because "the explanation of the incident would be extremely intricate" and potentially confuse the jury. Gov't Submission at 3. The government's concern is unfounded. "Specific instances of the conduct of a witness, for the purpose of attacking . . . the witness' character for truthfulness . . . may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). Thus, Defendants can merely ask Ms. Anderson whether she intentionally withheld <u>Brady</u> evidence from a defendant and must accept her answers without offering extrinsic evidence inconsistent with her testimony. If, as the government contends, Ms. Anderson's answer is "no," that will be the end of the matter and little trial time will be expended on this discreet matter.

Any risk of delay or confusion is heavily outweighed by the probative value of the evidence proffered by Defendants. The government can not seriously dispute the probative value of the allegation against Ms. Anderson. The government has taken the exact opposite position regarding the probative value of the disclosure of <u>Brady</u> material in the litigation involving Detective Brown's alleged prior conduct. Thus, Defendants' highly probative questions regarding Ms. Anderson's veracity are hardly outweighed by the minimal trial time it will take to question her about whether she intentionally withheld <u>Brady</u> evidence.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court permit questioning of Ms. Anderson regarding the intentional <u>Brady</u> violation alleged by defense counsel in <u>United States v. Ellis,</u> Cr. No. 2005-FEL-001467.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Robert A. Ayers (D.C. Bar #488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Counsel for Erick R. Brown


David Schertler
Danny Onorato
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C.  20004-2601
(202) 628-4199

Counsel for Milagros L. Morales

Dated:  August 23, 2007