UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00075-CKK |
| | ) |
| ERICK R. BROWN, and | ) |
| MILAGROS L. MORALES, | ) |
| | ) |
| Defendants. | ) |

---

**DEFENDANTS' MOTION  FOR JUDGMENT OF ACQUITTAL ON
COUNTS TWO, FOUR, SIX AND EIGHT OF THE INDICTMENT**

Defendants Erick R. Brown and Milagros L. Morales ("Defendants"), through

counsel, hereby move this Court, pursuant to Federal Rule of Criminal Procedure 29(a), for a

judgment of acquittal on Counts Two, Four, Six and Eight of the Second Superseding Indictment

("Indictment")[1] because the evidence is insufficient to sustain a conviction on those counts.

Defendants also move this Court to strike overt acts A, C, and the portion of overt act B that

alleges Defendants caused Witness B to "describ[e] the motion Jerome Jones used to attack

Terrance Brown . . . ," Indictment at 8, ¶ 2, from Counts One and Three and strike that allegedly

false statement from overt act E in Counts One and Five of the Indictment.  Lastly, Defendants

request that the Court strike this allegation that Defendants caused Witness B to change the

motions made by Jerome Jones and the allegation that Defendants caused Witness B to falsely

describe the weapon Jerome Jones used to attack Terrance Brown as a "sharp, silver, or shiny

---

[1] On August 14, 2007, the Court granted the government's motion to dismiss Count One of the Second Superseding Indictment with prejudice.  The parties agreed to renumber the counts to reflect the dismissal of Count One.  Defendants refer to the counts in the Indictment as renumbered.

object," id., as "false statements" charged in Count Seven of the Indictment because the evidence

is insufficient to sustain those alleged acts.

Defendants respectfully request oral argument on this motion.  A proposed Order

is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Robert A. Ayers (D.C. Bar # 488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Counsel for Erick R. Brown

David Schertler
Danny Onorato
Schertler & Onorato, L.L.P.
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C.  20004-2601
(202) 628-4199

Counsel for Milagros L. Morales

Dated:  August 27, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **Crim. No. 1:07-cr-00075-CKK** |
| ) | |
| ERICK R. BROWN, and ) | |
| MILAGROS L. MORALES, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT OF ACQUITTAL ON
COUNTS TWO, FOUR, SIX AND EIGHT OF THE INDICTMENT**

The Court should enter a judgment of acquittal on Counts Two, Four, Six and Eight of the Indictment because the evidence is insufficient to sustain a conviction.

The government has failed to prove that Defendants caused Candace Layne ("Witness A") to make a false statement to the AUSA assigned to the Club U matter. Instead, the evidence has established that Defendants instructed Ms. Layne to relay what she witnessed and not to change her statement based on speculation with other individuals. Even if the evidence could conceivably be interpreted as demonstrating that Defendants caused Ms. Layne to make a misrepresentation (which Defendants dispute), the government has in any event failed to prove that any such misrepresentation was material because Ms. Anderson testified that she did not perceive a difference between the way Ms. Layne described the motions that the man in the black Coogi shirt ("Coogi man") made in her initial video-taped interview and the motions Ms. Layne described during her interview with Ms. Anderson after Defendants' allegedly instructed her to alter her description of the motion.

Likewise, the government has failed to prove that Defendants caused Lyvonne Lawson ("Witness B") and Edythe Smith ("Witness C") to make any false statements to the assigned AUSA when they instructed them to accurately describe the weapon they saw Jerome Jones use to attack Terrance Brown. Ms. Lawson testified that what she saw was a silver, metal object and that is precisely how Defendants allegedly instructed her to describe the object to Ms. Anderson. Similarly, Ms. Smith stated that she saw Jerome Jones pull a sharp metal object out of his pants pocket and that is how Detectives Brown and Morales suggested that she describe the weapon to Ms. Anderson. Thus, these statements regarding the weapon used by Jerome Jones during his altercation with Terrance Brown were literally true and the evidence is insufficient to prove Defendants caused Ms. Lawson and Ms. Smith to make false statements about the weapon.

The government also offered no evidence that Defendants caused Ms. Lawson to make a false statement to Ms. Anderson regarding the motion Jerome Jones used to attack Terrance Brown. Ms. Lawson never testified that Detectives Brown and Morales instructed her to change her statement regarding the motions Jerome Jones made toward Terrance Brown. Likewise, Ms. Anderson did not testify that Ms. Lawson made any allegedly false statement regarding the motions Jerome Jones made when he attacked Terrance Brown during her interview in Ms. Anderson's office.

The government has also failed to prove Defendants themselves made any false statements to Ms . Anderson relating to the Club U matter. At most, the evidence has shown that Defendants told Ms. Anderson that Ms. Layne, Ms. Lawson and Ms. Smith made certain statements. Such statements were accurate because the witnesses had made the statements at

issue.  As such, Defendants' statements to Ms. Anderson were truthful and can not support a false statement charge.

Finally, there is a complete lack of evidence in the record upon which a reasonable juror could conclude that Defendants acted corruptly with the specific intent to obstruct the due administration of justice or to influence Ms. Layne's truthful testimony when they instructed her not to change the description of the "swinging" motion the Coogi man made towards Terrance Brown that she gave in her video-taped interview based on speculation, outside influences and assumptions based on her understanding of Terrance Brown's wounds.  Similarly, the evidence is insufficient to establish that Defendants acted corruptly with the specific intent to obstruct the due administration of justice or to influence Ms. Lawson's truthful testimony when they advised Ms. Lawson to accurately describe to Ms. Anderson the object she witnessed Jerome Jones pull from his pants pocket.

## I.    INTRODUCTION

Count One of the Indictment alleges that Defendants conspired to obstruct justice in violation of Title 22, D.C. Official Code, §§ 722(a)(6) and 1805 by providing and causing Witnesses A (Ms. Layne), B (Ms. Lawson) and C (Ms. Smith) to provide untruthful information about the Club U matter to the AUSA assigned to the case and arguing that the assigned AUSA should sign Jerome Jones' arrest warrant based on false information provided by these witnesses and Defendants themselves.  Indictment at 8-9.  Specifically, Count One alleges that Defendants caused Witness A (Ms. Layne) to alter her truthful testimony "describing how Suspect A attacked Terrance Brown, indicating that Suspect A was punching Terrance Brown with both hands rather than the reality that Suspect A was holding Terrance Brown's back with one hand and doing a stabbing motion with the other (overt act A); Defendants caused Witness B

(Ms. Lawson) to alter her truthful testimony so that she incorrectly described the weapon Jerome Jones used to assault Terrance Brown, the motion Jerome Jones used to attack Terrance Brown and the number of people that joined in the fight against Terrance Brown (overt act B); Defendants caused Witness C (Ms. Smith) to inaccurately describe the weapon she witnesses Jerome Jones use to attack Terrance Brown (overt act C); and Defendants argued that the assigned AUSA should sign the arrest warrant for Jerome Jones based on the false information provided by Witnesses A, B and C and the Defendants themselves made regarding the very same subject matter of the allegedly false statements made by Witnesses A, B and C (overt act E)." Id.

Count Five charges Defendants with endeavoring to obstruct the due administration of justice by taking the alleged actions in overt act E. Id. at 13. Counts Two through Four charge Defendants with corruptly persuading Witnesses A, B and C to alter their truthful testimony as alleged in overt acts A, B and C, respectively, in violation of Title 22, D.C. Code, §§ 722(a)(2) and 1805. Id. at 10-12.

Counts Six and Seven charge Defendants with causing Witnesses A and B to make the material false statements alleged in overt acts A and B, respectively, in violation of 18 U.S.C. §§ 2 and 1001. Id. at 14-15. Count Eight charges Defendants with making false statements to the assigned AUSA that are identical to those alleged in overt acts A, B and C, in violation of 18 U.S.C. §§ 2 and 1001. Id. at 16.

During its case-in-chief, the government failed to prove that Defendants caused Ms. Layne to provide an untruthful statement to Ms. Anderson regarding the motion the Coogi man made when he attacked Terrance Brown. To the contrary, the evidence establishes that Defendants advised Ms. Layne not to alter the truthful description of a swinging motion she gave during her video-taped interview based on conjecture and speculation. Indeed, the evidence

establishes that the Detectives actually instructed Ms. Layne <u>not</u> to alter the truthful statement she gave during her video-taped interview and that Ms. Anderson perceived the two statements as consistent. The government also failed to prove that Defendants caused Ms. Lawson and Ms. Smith to give an inaccurate description of the weapon they witnessed Jerome Jones use to attack Terrance Brown. Instead, the evidence establishes that the Detectives suggested that Ms. Lawson and Ms. Smith describe precisely what they observed in Jerome Jones' hand and the witnesses did so.

In addition, the government completely failed to introduce evidence that the Detectives caused Ms. Lawson to alter her description of the motion Jerome Jones used to attack Terrance Brown. Similarly, the government failed to introduce evidence of specific false statements Defendants made to Ms. Anderson. At most, the evidence supports an inference that Defendants stated that Witnesses A, B and C made certain statements to Ms. Anderson and she should sign the arrest warrant based on those statements. Even if that inference is justified (which Defendants dispute), however, Defendants' statements to Ms. Anderson are literally true because Witnesses A, B and C did in fact make those statements to Ms. Anderson. Thus, Defendants' statements cannot serve as the basis for a false statements charge.

The government has failed to introduce sufficient evidence to support the false statements charges in Counts Six and Eight and the false statements allegations in Count Seven concerning Ms. Lawson's description of the weapon and motion Jerome Jones used to attack Terrance Brown. Accordingly, the Court should enter a judgment of acquittal on Counts Six and Eight of the Indictment and strike two of the three false statements that Ms. Lawson allegedly made to Ms. Anderson in Count Seven of the Indictment. In addition, because the government has presented insufficient evidence to support the allegation that Defendants caused Ms. Lawson

to make an allegedly false description of the "stabbing" motion Jerome Jones used to attack Terrance Brown, the Court should strike that allegation from overt act B in Count One and strike the allegation that Defendants used Ms. Lawson's allegedly false statement concerning the motion Jerome Jones used to attack Terrance Brown from overt act E in Counts One and Five of the Indictment.

The government also presented insufficient evidence to establish that Defendants acted with the requisite corrupt intent to impede the due administration of justice when they advised Ms. Layne to report an accurate description of the motion she witnessed the Coogi man use to attack Jerome Jones. The evidence establishes that Ms. Layne's description during the car ride to Ms. Anderson's office of a "stabbing" motion made by the Coogi man was mere conjecture based on conversations with her friends after the event at issue and assumptions about the forensic evidence. Thus, the government failed to offer evidence that Defendants caused Ms. Layne to alter her truthful testimony. Instead, the evidence establishes that Defendants encouraged Ms. Layne to stick to the facts that she observed, which resulted in Ms. Layne describing to Ms. Anderson the motion of the Coogi man in a manner consistent with her truthful video-taped statement elicited by Detectives Brown and Morales. As such, the government has presented insufficient evidence from which a reasonable juror could conclude that Defendants acted corruptly with respect to Ms. Layne. Accordingly, the Court should enter a judgment of acquittal on Count Two of the Indictment, and strike overt act A from Count One. The Court should also strike the allegation that Defendants corruptly used Ms. Layne's "false statement" to argue in support of the Jerome Jones arrest warrant from overt act E in Counts One and Five of the Indictment.

Similarly, the government utterly failed to present evidence that Defendants corruptly endeavored to cause Ms. Smith to alter her truthful statement regarding the description of the weapon she saw Jerome Jones use to attack Terrance Brown. Ms. Smith testified that the Detectives merely suggested that she describe the object she saw rather than attach a specific label to it if she was not certain that it was a box cutter. Ms. Smith stated that, because she was not certain that the weapon was a box cutter, she described the characteristics of the weapon she had observed. Accordingly, the Court should enter a judgment of acquittal on Count Four of the Indictment, strike overt act B from Count One and strike the allegation Defendants corruptly used Ms. Smith's allegedly false statement to argue in support of the Jerome Jones arrest warrant from overt act E in Counts One and Five.

## II.     ARGUMENT

### A.     <u>Rule 29 Legal Standard</u>

Federal Rule of Criminal Procedure 29(a) provides in relevant part:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

Fed. R. Crim. P. 29(a). In considering a Rule 29 motion, the court must grant relief "when the evidence . . . is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime." <u>United States v. Payton</u>, No. 81-1792, 1982 U.S. App. LEXIS 21154, at *8 (D.C. Cir. Mar. 9, 1982) (citing <u>United States v. Staten</u>, 581 F.2d 878, 882 (D.C. Cir. 1978) (citation omitted)). While the evidence must be viewed in the light most favorable to the government, the Court is required to take a "hard look at the evidence and accord the government the benefit of only 'legitimate inferences.'" <u>United States v. Recognition Equip., Inc.</u>, 725 F. Supp. 587, 588 (D.D.C. 1989) (noting that the court

should not "indulge in fanciful speculation or bizarre reconstruction of the evidence" when

considering a Rule 29 motion).  "'The trial judge should not allow the case to go to the jury if the

evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's

guilt.'"  United States v. Morrow, No. 04-355 (CKK), 2005 U.S. Dist. LEXIS 11753, at *11

(D.D.C. June 13, 2005) (quoting United States v. Bethea, 442 F.2d 790, 792 (D.C. Cir. 1971)).

In resolving this motion, the Court should consider all evidence presented in the

government's case-in-chief and on cross-examination of the government's witnesses.  United

States v. Brodie, 403 F.3d 123, 133-34 (3d Cir. 2005).  Defendants contend that the Court should

grant this motion immediately due to the lack of sufficient evidence to sustain a conviction.

However, if the Court reserves decision on this motion under Rule 29(b), the Court must later

resolve this motion solely on the basis of the evidence at the time the ruling was reserved without

consideration of any evidence that may be presented in the defense case-in-chief.  Fed. R. Crim.

P. 29(b); see also United States v. Wahl, 290 F.3d 370, 375 (D.C. Cir. 2002).

**B.**    **The Government Has Failed To Prove That Defendants Caused Ms. Layne to Make A Materially False Statement To The Assigned AUSA**

**1.**    **The Government Has Failed To Prove That Ms. Layne's Statement To Ms. Anderson Was False**

In a section 1001 case, "'[t]he starting point for everything is the statement.'"

United States v. Clifford, 426 F. Supp. 696, 703 n.4 (E.D.N.Y. 1976) (citation omitted).  Falsity

is an essential element of false representations offense under section 1001.  United States v.

Milton, 8 F.3d 39, 45 (D.C. Cir. 1993), cert. denied, 513 U.S. 919 (1994); United States v. Crop

Growers Corp., 954 F. Supp. 335, 354 (D.D.C. 1997).

In Count Six, the government alleges that Defendants caused Ms. Layne "to

describe the assailant in the black shirt . . . as punching with both of his hands, not as doing a

stabbing motion with one hand and holding Terrance Brown's back with the other."
Government Bill Of Particulars ("BOP") at 1. To sustain a false statement charge, the
government must prove that Defendants knowingly and willfully caused Ms. Layne to make a
materially false statement. 18 U.S.C. § 1001. The government has failed to establish that the
statement Ms. Layne made to Ms. Anderson was false or, if false, that it was material to the Club
U investigation or that Detectives Brown and Morales knowingly and willfully caused her to
make the false statement.

Ms. Layne testified that the palm-up motion she demonstrated during her video-
taped interview was an accurate depiction of the motion the Coogi man used to attack Jerome
Jones. Ms. Layne also agreed that she did not see a weapon in either hand of the Coogi man and
that the motion she demonstrated was consistent with an upward punching motion. Further,
Ms. Layne testified that the description of a "swinging" motion she gave during her video-taped
interview with Detectives Brown and Morales was accurate and that she never described the
motion during the interview as a "stabbing" motion.

Ms. Layne also testified that she first mentioned to the Detectives that she thought
the Coogi man must have made a stabbing motion when Detectives Brown and Morales
transported Ms. Layne to be interviewed by Ms. Anderson. Ms. Layne stated that she had been
discussing the Club U incident with her girlfriends and she speculated that the Coogi man must
have stabbed Terrance Brown based on the heights of the individuals involved, the location of
the wounds on the left side of Terrance Brown's body and other "evidence" of which Ms. Layne
had no direct knowledge. Ms. Layne also demonstrated to the Detectives what appeared to be
more like a stabbing motion that was inconsistent with her video-taped statement. However, the
government failed to prove that Ms. Layne told the Detectives that she actually witnessed the

Coogi man make a stabbing motion or that she believed the swinging motion she demonstrated during her video-taped statement was inaccurate.

During her direct examination, Ms. Layne testified that Detective Morales asked her to change the motion she demonstrated in the car ride to the U.S. Attorney's Office from a stabbing motion to more of a punching motion. However, on cross-examination, Ms. Layne clarified that Detective Morales instructed Ms. Layne to describe the motion she saw and not to change the description or demonstration of the swinging motion she gave in her video-taped statement based on speculation. Ms. Layne testified that, during her interview with Ms. Anderson, she used Detective Brown to demonstrate and describe the swinging, punching motion she witnessed the Coogi man do to Terrance Brown's chest and back. Ms. Layne testified that, at the time, she did not believe that Detective Morales' instruction not to change her description based on speculation was improper. More importantly, Ms. Layne never testified that the motion she demonstrated to Ms. Anderson was false.

In sum, the evidence establishes that Ms. Layne never made a "truthful" statement that she witnessed the Coogi man make a "stabbing" motion when he attacked Terrance Brown. Thus, there was never a "truthful" statement regarding a stabbing motion that Detectives Brown and Morales could have caused Ms. Layne to change, merely a speculative assumption based on gossip with her girlfriends. The evidence also established that Ms. Layne's video-taped statement was accurate and Detective Morales merely instructed Ms. Layne to give a truthful statement to Ms. Anderson consistent with her prior truthful statement. Thus, the government has failed to prove that Defendants caused Ms. Layne to make any false statement.

2.    **The Government Has Failed to Prove Defendants Knowingly and Willfully Caused Ms. Layne to Make A False Statement**

To the extent the Court determines that there is sufficient evidence that Ms. Layne's statement to Ms. Anderson was untruthful, the government has offered no evidence to establish Defendants "knowingly" and "willfully" caused her to make that statement. Ms. Layne's testimony established that Detective. Morales instructed her not to change her prior, truthful description of the motion the Coogi man made while attacking Terrance Brown and that Ms. Layne never told the Detectives that she witnessed the Coogi man make a stabbing motion, but speculated that he must have based on conversations with her girlfriends.  Therefore, to the extent Ms. Layne believed that the swinging motions she demonstrated to Ms. Anderson were untruthful, there is no evidence that the Detectives were aware of that fact or that they willfully caused her to provide that untruthful statement.  Consequently, the government has failed to submit sufficient evidence from which a reasonable juror could conclude that Defendants knowingly and willfully caused Ms. Layne to make a false statement.

3.    **The Government Has Failed To Prove That Ms. Layne's Allegedly False Statement Was Material**

Even if the government had submitted sufficient evidence to establish that the minor changes Ms. Layne made to her statement regarding the Coogi man's swinging, punching motion to Ms. Anderson were untruthful, the government has failed to prove that those changes were material. "Materiality is an essential element of the offense in a prosecution such as this." United States v. Poindexter, 725 F. Supp. 13, 27 (D.D.C. 1989) (citations omitted).  "The test of materiality is 'whether the false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made.'"  Id. (citations omitted).  The government has failed to provide sufficient evidence that the minor

- 11 -

change Ms. Layne made to her description and demonstration of the motion the Coogi man used to attack Jerome Jones was capable of influencing Ms. Anderson.

Ms. Layne testified that Detective Morales instructed her to remain consistent with her previous truthful statement and she followed Detective Morales' instruction. She also testified that the motion she demonstrated in the video-taped interview and in her meeting with Ms. Anderson were "swinging, punching" motions and the minor difference was that she demonstrated that one of Jerome Jones' hands was punching rather than resting on Terrance Brown's back.

The evidence establishes that the differences between the two descriptions of the Coogi man's actions that Ms. Layne gave were immaterial. Indeed, Ms. Anderson testified that she did not perceive any significant difference between Ms. Layne's description of the Coogi man's actions in her video-taped statement and the statement she gave in Ms. Anderson's office. Moreover, Ms. Anderson never accused Ms. Layne of lying about the motion she described. Ms. Anderson testified that, after her interview of Ms. Layne, they were in the same position as before the interview and she needed to meet with additional witnesses. In effect, Ms. Anderson testified that Ms. Layne's statement was immaterial to her determination of whether probable cause existed to arrest Jerome Jones for murder one while armed. Furthermore, there is no evidence upon which a reasonable juror could conclude that Ms. Layne's statement, which was largely unaltered from her previous truthful statement that Ms. Anderson had already viewed several times, was capable of influencing Ms. Anderson. Thus, the government has failed to prove that Ms. Layne's statement to Ms. Anderson was material to her decision whether she should sign the arrest warrant for Jerome Jones.

In sum, the government has failed to prove that Ms. Layne's statement to Ms. Anderson was false. Even if it could be deemed false, the government has failed to prove that Defendants caused her to make the statement to Ms. Anderson or that it was material to Ms. Anderson's decision whether to sign the arrest warrant. Accordingly, the Court should enter a judgment of acquittal on Count Six of the Indictment.

### C.     The Government Has Failed To Prove That Ms. Lawson Made False Statements Regarding The Weapon And Motion Jerome Jones Used To Attack Terrance Brown[2]

Count Seven of the Indictment charges Defendants with causing Ms. Lawson to "tell the assigned AUSA three things that were untruthful: first, that Jerome Jones had a sharp silver, or shiny object, not a box cutter; second that only one person was attacking Terrance Brown, and third, that Jerome Jones stabbed Brown rather than slashed him." BOP at 2. The government has failed to prove that Ms. Lawson's description of the weapon Jerome Jones used to attack Terrance Brown was untruthful or that Defendants caused Ms. Lawson to tell Ms. Anderson that Jerome Jones stabbed rather than slashed Terrance Brown.

As discussed above, to obtain a conviction on a section 1001 false statement charge, the government must prove that the representations Defendants made, or caused to be made, were false. Milton, 8 F.3d at 45; Crop Growers Corp., 954 F. Supp. at 354. Accordingly, the D.C. Circuit has held that "[t]he defense of literal truth applies to section 1001 prosecutions . . . ." Milton, 8 F.3d at 45; see also United States v. Dale, 991 F.2d 819, 832-33 n.22 (D.C. Cir.), cert. denied, 510 U.S. 1030 (1993). Thus, where an indictment is "premised on a statement

---

[2] Defendants may seek to supplement this memorandum of law upon the completion of Ms. Lawson's testimony.

which on its face is not false," the charge is "fatally defective in failing to set forth an offense under § 1001" and "cannot survive."  United States v. Vesaas, 586 F.2d 101, 104 (8th Cir. 1978).

The literal truth defense stems from the Supreme Court's holding in Bronston v. United States that a perjury prosecution under 18 U.S.C. § 1621 cannot be premised on statements that are "literally true" even if "shrewdly calculated to evade."  409 U.S. 352, 362 (1973); see also United States v. Clarridge, 811 F. Supp. 697, 712 (D.D.C. 1992) ("the federal perjury statutes do not reach statements which are literally true, even if the speaker's answer was intended to deceive or be unresponsive to the question") (citing Bronston, 409 U.S. at 360); U.S. v. Naegele, 341 B.R. 349, 359 (D.D.C. 2006) ("a perjury conviction cannot proceed on the basis of statement by a defendant that is literally true, even if it is 'incomplete, intentionally misleading or "misleading by negative implication."'" (quoting In re Grand Jury Proceedings, 117 F. Supp. 2d 6, 31 (D.D.C. 2000) (quoting Bronston, 409 U.S. at 359-60))).

The literal truth defense has been explicitly applied to section 1001 prosecutions based on the same reasoning that falsity is an essential element of a false statements offense. Milton, 8 F.3d at 45 n.7; United States v. Hsia, 24 F. Supp.2d 33, 58 (D.D.C. 1998) (reversed on other grounds); United States v. Erlichman, 379 F. Supp. 291, 292 (D.D.C. 1974); Vesaas, 586 F.2d at 104.  Moreover, when a defendant contends that an alleged false statement is literally true, "it is incumbent upon the Government to negative any reasonable interpretation that would make the defendant's statement factually correct."  United States v. Diogo, 320 F.2d 898, 907 (2d Cir. 1963).

During direct examination, Ms. Lawson testified that she witnessed Jerome Jones pull a shiny or silver object from his front pocket that appeared to her to be a box cutter. Ms. Lawson also testified that Detective. Morales instructed Ms. Lawson to describe the object

- 14 -

she saw to Ms. Anderson as a shiny or silver metal object and not as a box cutter and she did so.

Indeed, Ms. Anderson testified that Ms. Lawson described the weapon as a shiny or silver object.

The government failed to prove that Ms. Lawson's description of the weapon was false,

however, because Ms. Lawson testified that the object she saw Jerome Jones pull from his

pocket was in fact a silver or shiny metal object. Thus, Ms. Lawson's statement was literally

true and the government has failed to prove that Defendants caused Ms. Lawson to make a false

statement to Ms. Anderson regarding the description of the weapon Jerome Jones used to attack

Terrance Brown.

       Instead, the evidence establishes that Defendants caused Ms. Lawson to literally

describe what she observed Jerome Jones pull from his pocket instead of labeling the object a

box cutter. At most, the government has established that Ms. Lawson's description of the

weapon as a shiny metal object instead of a box cutter was evasive. However, as discussed

above, an evasive statement, when literally true, can not support a false statement charge.

Bronston, 409 U.S. at 362. Consequently, the Court should strike the allegation from Count

Seven of the Indictment that Defendants caused Ms. Lawson to provide a false statement to the

AUSA assigned to the Club U matter regarding her description of the weapon.

       The government has also failed to prove that the Detectives caused Ms. Lawson to

tell the assigned AUSA that Jerome Jones stabbed rather than slashed Terrance Brown.

Ms. Anderson testified that when she perceived differences between Ms. Lawson's video-taped

statement and the statement she gave in Ms. Anderson's office, she played portions of the video

and confronted Ms. Lawson regarding the differences she observed. Ms. Anderson also testified

that she questioned Ms. Lawson about the changes she observed regarding Ms. Lawson's

description of the weapon Jerome Jones used to attack Terrance Brown and the number of people

that jumped into the fight.  Ms. Anderson did not testify that Ms. Lawson changed her testimony

regarding the motions Jerome Jones made when he attacked Terrance Brown or that she

questioned Ms. Lawson about that topic.  While Ms. Anderson testified that she observed three

differences between Ms. Lawson's video-taped statement and the statement she gave in

Ms. Anderson's office, Ms. Anderson never stated what the third difference was.

During direct examination, Ms. Lawson testified that she could not recall if she

discussed the motion Jerome Jones used to attack Terrance Brown with the Detectives prior to

her interview with Ms. Anderson.  The government did not question her further on the issue.

Thus, the government has utterly failed to prove that Ms. Lawson changed her statement

regarding Jerome Jones's "slashing" motion in any way when she spoke to Ms. Anderson.

Furthermore, the government failed to submit any evidence that the Detectives caused

Ms. Lawson to alter her statement if she did so.  Consequently, there is no evidence to support a

false statement or obstruction charge based on that alleged conduct and the Court should strike

the allegation that Defendants caused Witness B to falsely describe Jerome Jones' motions as a

stabbing motion rather than a slashing motion to the assigned AUSA from Counts One and

Seven and strike the allegation that Defendants corruptly used Ms. Lawson's false statement to

argue in support of the Jerome Jones arrest warrant from overt act E in Counts One and Five.

## D.    The Government Has Failed To Prove Defendants Made False Statements To The Assigned AUSA

Count Eight of the Indictment charges Defendants with making materially false

statements to Ms. Anderson regarding the Club U matter.  Specifically, Defendants are charged

with making the very same false representations to Ms. Anderson as the government alleges that

Defendants caused Witnesses A, B and C to make in overt acts A, B and C in Count One.

Supplemental Bill Of Particulars at 1.  However, the government has failed to establish that

Defendants themselves made any affirmative representations to Ms. Anderson. The government never elicited from Ms. Anderson any specific false statements made by Defendants during their discussions with her about the warrant.

Instead, the government has presented evidence that Defendants argued that the witnesses' statements established probable cause to arrest Jerome Jones and that Ms. Anderson should sign the arrest warrant. However, Defendants' subjective belief that probable cause existed and statements to that effect are not a "false" statement of fact. Therefore, Defendants' statements cannot provide the basis for a false statement charge.

At most, the government has established sufficient evidence from which a reasonable juror could conclude that the Detectives stated to Ms. Anderson that she should sign the arrest warrant because Witnesses A, B and C made certain statements and those statements established probable cause. However, where a defendant makes a statement that accurately "repeat[s] or confirm[s]" an allegedly untruthful statement, the repeating or confirming statement is itself literally true. United States v. Carey, 152 F. Supp.2d 415, 425 (S.D.N.Y. 2001) (striking two specifications from a perjury indictment because defendant's statements were "literally true," where the defendant accurately confirmed that he had made two past, allegedly untruthful, statements). Thus, even if Witnesses A, B and C's statements to Ms. Anderson were untruthful, Defendants' statements to Ms. Anderson that the witnesses made those statements were literally true and can not support a § 1001 false statement charge. Milton, 8 F.3d at 45; Crop Growers Corp., 954 F. Supp. at 354.

In sum, the government has failed to prove that Defendants made any factual misrepresentations to the assigned AUSA. Alternatively, if the Court finds that the government has presented sufficient evidence that Defendants made representations that Witnesses A, B and

C made certain statements, the Defendants' statements are literally true and the government has failed to prove that Defendants made a false statement to the assigned AUSA. Accordingly, the Court should enter a judgment of acquittal on Count Eight of the Indictment.

### E.    The Government Has Failed To Prove Defendants Endeavored To Corruptly Influence Ms. Layne's Truthful Testimony

Count Two of the Indictment charges that Defendants "corruptly persuaded" Ms. Layne to describe the assailant in the black shirt as punching Terrance Brown with both hands and not as stabbing him with one hand while holding Terrance Brown's back with the other. Thus, the government must prove that Defendants acted with "an improper motive" when they instructed Ms. Layne not to alter her previous statement based on speculation and to remain consistent with her truthful video-taped statement. The government has failed to present evidence sufficient to establish that Defendants acted corruptly. Instead, the evidence establishes that Detectives Brown and Morales actually endeavored to prevent Ms. Layne from altering her previously truthful statement.

As discussed above, Ms. Layne testified that she did not believe Defendants were acting corruptly when Detective Morales endeavored to ensure that Ms. Layne's statement to Ms. Anderson remained an accurate account of what she witnessed and not a modified account based on speculation and gossip with her girlfriends. Ms. Layne also testified that the Detectives never told her to lie to Ms. Anderson. Ms. Layne further testified that she had never made a truthful or accurate statement to Detectives Brown and Morales that the Coogi man stabbed Terrance Brown. Therefore, while Detective Morales might have instructed Ms. Layne to demonstrate the punching motion that she had described during the video-taped interview instead of the stabbing motion she suggested during the car ride based on speculation and unwarranted assumptions about the evidence, Defendants did not instruct Ms. Layne to change a truthful

- 18 -

statement or make a false statement to Ms. Anderson.  Furthermore, the government offered no

evidence that Ms. Layne informed the Detectives that she believed demonstrating a punching

motion to Ms. Anderson would be untruthful.  Thus, the government failed to present sufficient

evidence from which a reasonable juror could conclude that Defendants acted corruptly when

they instructed Ms. Layne to demonstrate a motion consistent with her truthful video-taped

statement.  Accordingly, the Court should enter a judgment of acquittal on Count Two of the

Indictment, strike overt act A from Count One of the Indictment and strike the allegation that

Defendants corruptly used Ms. Layne's allegedly false statement to argue in support of the

Jerome Jones arrest warrant from overt act E in Counts One and Five.

**F.     The Government Has Failed To Prove Defendants Corruptly Endeavored To Influence Ms. Smith's Truthful Testimony**

Count Four of the Indictment charges Defendants with endeavoring to corruptly

influence Ms. Smith "to change her description of the weapon used by Jerome Jones from a box

cutter to a sharp, silver, or shiny object" and causing Ms. Smith "to omit [her] accurate

description of the box cutter."  BOP at 2.  The government has failed to prove that Defendants

acted corruptly when they "suggested" to Ms. Smith that she accurately describe the object if she

was not certain that it was a box cutter.

First, the government has failed to prove that the statement Ms. Smith made to

Ms. Anderson was false.  Tellingly, the government declined to include a false statement charge

in the Indictment based on Ms. Smith's statement.  Ms. Smith testified that the object she

witnessed Jerome  Jones lift above his head as he charged into the crowd at Club U was a silver

object with a blade.  Ms. Smith also testified that she truthfully described the object as a sharp

metal object to Ms. Anderson.  Further, in response to a question from the government,

Ms. Smith stated that she still describes the object as a sharp metal object to this day.  Indeed,

Ms. Anderson confirmed that Ms. Smith described the weapon Jerome Jones pulled from his pocket as a shiny metal object. Thus, as discussed above, the evidence elicited by the government establishes that Ms. Smith's statement to Ms. Anderson was literally true.

Second, during direct examination, Ms. Smith testified that the Detectives instructed her to describe what she was sure she saw. Ms. Smith also testified that, while she believed the weapon resembled a box cutter, she was not certain. Further, according to Ms. Smith, the Detectives never instructed her how to describe the object, but merely told her to describe what she saw. Neither Ms. Smith's nor Ms. Anderson's testimony established that the Detectives told Ms. Smith not to describe the object as a box cutter if she was certain that was what she saw. Ms. Smith emphasized that she never believed the Detectives were instructing her to do anything at all, let alone anything improper. Instead, Ms. Smith testified that the Detectives merely made a suggestion that she describe only what she was sure she saw and left the decision of how to describe the object up to her.

While the government established that Ms. Smith was 100% certain of her description of the 1" to 1.25" triangular blade, the government failed to prove that Ms. Smith ever relayed that information to Detectives Brown and Morales. Therefore, the government failed to introduce evidence upon which a reasonable juror could conclude that Defendants acted corruptly when they advised Ms. Smith to describe the object she saw.

In sum, the government has failed to prove that Defendants caused Ms. Smith to provide an untruthful statement to Ms. Anderson. Likewise, the government has failed to present sufficient evidence upon which a reasonable juror could conclude that Defendants' suggestion that Ms. Smith accurately describe what she saw was a corrupt attempt to influence Ms. Smith's truthful testimony. Accordingly, the Court should enter judgment of acquittal on Count Four of

the Indictment, strike overt act C from Count One and strike the allegation that Defendants corruptly used Ms. Smith's allegedly false statement to argue in support of the Jerome Jones arrest warrant from overt act E in Counts One and Five of the Indictment.

## III.   CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal on Counts Two, Four, Six and Eight of the Indictment, and strike overt acts A, C, and the allegation in overt act B that Defendants caused Witness B to provide untruthful information regarding the motion and weapon Jerome Jones used to attack Terrance Brown from Count One. The Court should also strike the allegation that Defendants used Witnesses A and C's allegedly false statements to argue in support of the Jerome Jones arrest warrant from overt act E in Counts One and Five. Finally, the Court should strike Witness B's allegedly untruthful information regarding the motion and weapon Jerome Jones used to attack Terrance Brown from Count Seven and the allegation that Defendants used Witness C's allegedly false description of the motion Jerome Jones used to attack Terrance Brown to argue in support of the Jerome Jones arrest warrant from overt act E in Counts One and Five.

Respectfully submitted,

_____

Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Robert A. Ayers (D.C. Bar #488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Counsel for Erick R. Brown

David Schertler
Danny Onorato
Schertler & Onorato, L.L.P.
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C.  20004-2601
(202) 628-4199

Counsel for Milagros L. Morales

Dated:  August 27, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
UNITED STATES OF AMERICA,           )
                                                    )
          v.                                       )          Crim. No. 1:07-cr-00075-CKK
                                                    )
ERICK R. BROWN, and                     )
MILAGROS L. MORALES,                 )
                                                    )
                         Defendants.          )
_____)

## ORDER

       Upon consideration of Defendants' Motion For Judgment Of Acquittal On Counts

Two, Four, Six And Eight Of The Indictment, it is HEREBY ORDERED that Defendants'

Motion is GRANTED and Counts Two, Four, Six and Eight of the Indictment are DISMISSED

and those false statements are STRICKEN from overt act E in Counts One and Five.  It is further

ORDERED that the allegation in overt act B that Defendants caused Witness B to provide

untruthful information to the assigned AUSA regarding the motion Jerome Jones used to attack

Terrance Brown is STRICKEN from Count One and overt act E in Counts One and Five and the

alleged false statements regarding Witness B's description of the weapon and motion Jerome

Jones used to attack Terrance Brown are STRICKEN from Count Seven.


                                 _____
                                 Colleen Kollar-Kotelly
                                 UNITED STATES DISTRICT JUDGE

copies to:

William F. Gould
Assistant United States Attorney
U.S. Attorney's Office for the
Western District of Virginia
225 West Main Street

Charlottesville, VA  22902

Reid H. Weingarten
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795

David Schertler
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C.  20004-2601